OPINION OF THE COURT
Harold R. Soden, J.
The principal issue in this case is whether the attachment of a nonresident defendant’s liability insurance policy to obtain jurisdiction as sanctioned in Seider v Roth (17 NY2d 111), and progeny has been overruled by the recent United States Supreme Court case, Shaffer v Heitner (433 US 186).
*662 In April, 1972, plaintiff Michael P. Attanasio was injured in an automobile accident in Florida. He and his father sued an owner-driver in the Florida courts and recovered judgments of $9,500 and $40,000, respectively. These judgments have been satisfied. Following the accident, plaintiff Michael P. Attanasio was hospitalized in defendant hospital and treated by defendant, Dr. Ferre. He was discharged from Monroe Hospital on June 6, 1972.
On or about February 11, 1975 and June 9, 1975, plaintiff obtained orders of attachment directing levies against each defendant’s respective liability policies. Both policies were issued and delivered in Florida. Defendants’ respective insurance carriers have offices and do business in New York State. These insurers were timely served with copies of the order of attachment and the complaint in the State of New York. Both defendants were personally served with a summons and complaint in the State of Florida within 60 days of the granting of the order of attachment. Plaintiffs have sued to recover for injuries, medical expenses, and loss of services allegedly sustained as a result of defendants’ negligence, malpractice, and breach of contract.
Both defendants move for dismissal, summary judgment, and vacation of the order of attachment, claiming that the court lacks jurisdiction over their persons and property. Both defendants had previously interposed these affirmative defenses in their amended answers. While defendant Ferre’s objection to in rem or quasi-in rem jurisdiction (CPLR 3211, subd [a], par 9) is somewhat inartfully pleaded, the court construes the objection as not waived.
In Shaffer v Heitner (supra), plaintiff, a nonresident of Delaware, commenced a shareholder’s derivative action in Delaware. Simultaneously, he moved for an order of sequestration of the Delaware property of the individual defendants. This motion was granted, and the sequestors seized approximately 82,000 shares of Greyhound common stock belonging to 19 of the defendants and options belonging to another two defendants. The stock was considered to be in Delaware, and so subject to seizure, by virtue of the Delaware Code (tit 8, § 169), which made Delaware the situs of ownership of all stock in Delaware corporations. Defendant Shaffer and the other defendants asserted that under the rule of International Shoe Co. v Washington (326 US 310), they did not have *663 sufficient contact with Delaware to sustain the jurisdiction of that State’s courts.
The court held (Shaffer v Heitner, 433 US 186, supra) that the sequestered shares were not the subject matter of the litigation and that the underlying causes of action were not related to the property. Thus, the presence of the property in the State (the court had previously noted that none of the certificates representing the seized property were physically present in Delaware) did not provide sufficient contact among the foreign State, the defendants, and the litigation.
The plaintiff in Shaffer v Heitner did not allege that any of the defendants were ever physically present in Delaware and did not identify any act related to the shareholders’ derivative cause of action as having taken place in Delaware. Plaintiff Heitner contended that defendants’ positions as directors and officers of a corporation chartered in Delaware provided sufficient contacts, ties and relations to give the Delaware courts jurisdiction. The court rejected this argument and similarly rejected the argument that defendants’ entitlement to the benefits provided by Delaware law for corporate officers and directors were sufficient contacts to support jurisdiction. The court held that Delaware’s assertion of jurisdiction over appellants in this case was inconsistent with the constitutional limitation on State power as expressed in International Shoe Co. v Washington (supra, p 319). ("[the due process] clause does not contemplate that a state may make binding a judgment . . . against an individual or corporate defendant with which the state has no contacts, ties or relations.”) (Shaffer v Heitner, 433 US 186, 216, supra.)
The principal lesson from Shaffer v Heitner (supra) is that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in International Shoe and its progeny”. (Shaffer v Heitner, supra, p 212.)
The constitutional issue presents itself as follows: May a State, which has in personam jurisdiction over insurers and is the residence of the injured plaintiffs, exercise jurisdiction in a tort case involving incidents which took place in a foreign jurisdiction and which were allegedly caused by residents of that jurisdiction, to secure the proceeds of a liability policy issued in that foreign jurisdiction? (See Minichiello v Rosenberg, 410 F2d 106, 113 [dissenting opn]; Siegel, 1968 Supplementary Practice Commentary to CPLR 5201, McKinney’s Cons Laws of NY, Book 7B.)
*664 Preliminarily, this court holds that the existence of a limited appearance statute in New York (CPLR 320, subd [c]), while there was no such statute in Shaffer v Heitner (supra, pp 195-196, n 12), does not change the analysis required by the holding in Shaffer v Heitner (supra, p 207, n 23 and p 209, n 32 and 33). The court will first consider whether the presence of the property or the debt within the State alone provides sufficient contacts with the defendants and New York and then proceed to analyze whether there are other ties or contacts sufficient to justify jurisdiction.
Allegations of negligence, malpractice, and breach of contract are the source of the controversy between these parties. The property or debt attached here is "completely unrelated” to the operative facts of plaintiffs’ causes of action (Shaffer v Heitner, supra). Whatever obligations to defendants each insurance policy represents, these plaintiffs concede to be the property or debts of the defendant and seek to apply them to the satisfaction of their claims against these defendants (see Shaffer v Heitner, supra, p 199, n 17). As in Shaffer v Heitner (supra) and Harris v Balk (198 US 215), the main role played by the property is to provide the basis for bringing the defendant into court (Shaffer v Heitner, 433 US 186).
The "presence” of defendants’ property or debt in this State is purely fortuitous and does not indicate that the defendants have purposefully availed themselves of the privilege of conducting activities within New York, thus invoking benefits and protection of New York’s laws. (Hanson v Denckla, 357 US 235, 253.) The "presence” of defendants’ liability insurance policies alone does not provide sufficient contacts with New York to support jurisdiction of New York’s courts over defendants.
In their affidavits in opposition and memorandum of law, plaintiffs allege the following "contacts” between defendants and New York State:
1. Both plaintiffs are lifelong domiciliaries and residents of New York and defendants knew this when they treated plaintiff, Michael P. Attanasio.
2. The plaintiff, Michael T. Attanasio, assigned insurance benefits to the defendants, guaranteed payment to the defendants, and the defendants entered into a contract with the plaintiff. Michael E. Attanasio, a New York resident, signed assignment and guarantee documents within the State of New York. A contract was entered into in New York wherein and *665 whereby the plaintiff would pay the money, and the defendant would render medical services to plaintiff’s infant son, Michael P. Attanasio.
3. Correspondence and communications were had between the plaintiff, while in New York, and the defendants.
4. That any and all insurance benefits which were to be paid to the defendants were to be made from and through the plaintiff’s employment at the General Electric Company of Schenectady, New York.
5. That the insurance companies, which hold the property of the defendants, are agents of the defendants, have contracted to defend and indemnify the defendants and have been served with process in this action, are doing business in New York, have filed with the New York State Department of Insurance and have contracted to defend and indemnify the defendants in New York.
6. That there existed at the time the causes of action herein arose a doctor-patient and a hospital-patient relationship between the defendants and the plaintiffs at times when the plaintiff and his infant son were residents of and located in the State of New York.
7. That defendants committed tortious acts without the State causing injury to persons and property within the State, and defendants should have expected or should reasonably have expected such acts to have consequences in the State, and they derived substantial revenue from interstate commerce.
The latter "contact” is an insufficient basis for jurisdiction. The injury alleged occurred in the State of Florida with resultant damage in the State of New York. Thus, jurisdiction, pursuant to CPLR 302 (subd [a], par 3, cl [ii]) cannot be obtained (see Black v Oberle Rentals, 55 Misc 2d 398; see, also, Chemical Bank v World Hockey Assn., 403 F Supp 1374; Security Nat. Bank v Ubex Corp., 404 F Supp 471; Vamosy v Gateway Ins. Co., 49 AD2d 489).
The fifth contact, as noted above, is also an insufficient basis for jurisdiction. Plaintiffs have not alleged or sought leave to discover any acts that the insurers performed in New York on behalf of either defendant hospital or defendant doctor. Nor have defendants alleged or sought to discover the extent of any authority given by the defendants to their respective insurers to do or transact business for the defendants in New *666 York, which would subject the defendants to personal jurisdiction in New York. The allegations in opposition are conclusory and insufficient to establish that either defendant through their insurers is transacting any business within New York State or doing any business within New York State. Furthermore, if the allegations can be read to establish that either of defendants’ insurers transacted business within New York by performing acts concerning each defendant’s insurance coverage, there would still be no personal jurisdiction over the defendants because the causes of action do not arise out of such transaction of business (CPLR 302, subd [a]).
The "contacts” recited in 1 above are obviously insufficient. Treatment of or hospitalization of a New York resident is not a purposeful act by which defendants have availed themselves of the privilege of conducting activities within the foreign State, thus invoking the benefits and protections of its laws (see Hanson v Deckla, 357 US 235, supra). For the same reason, the fourth alleged contact is insufficient.
Plaintiff’s father’s execution of the assignment contract as noted in No. 2 above is an insufficient contact to support New York jurisdiction (see Standard Wine & Liq. Co. v Bombay Spirits, 20 NY2d 13, 17). The remaining contacts listed in Nos. 3 and 6 above are insufficient to confer personal jurisdiction over the defendants (Del Bello v Japanese Steak House, 43 AD2d 455, and cases cited therein). Moreover, there are no allegations that any New York doctors or the Ellis Hospital in Schenectady, New York, acted on behalf of the defendants.
Defendants’ motions are granted. In summary, neither defendant has sufficient contacts in the State of New York to allow its courts to constitutionally exercise jurisdiction whether in personam or quasi in rem.