J. Roger FAHERTY and Faherty &
Faherty, Inc., Plaintiffs,

v.

Harris R. FENDER, Defendant.

No. 82 Civ. 8667 (LFM).

United States District Court,
S.D. New York.

Sept. 28, 1983.

Crowell, Rouse & Varian by Francis R. Matera, New York City, for defendant.

Patrick J. Monaghan, Jr., New York City, for plaintiffs.

## OPINION and ORDER

MacMAHON, District Judge.

Defendant Harris R. Fender ("Fender") moves, pursuant to Rule 12(b), Fed.R.Civ.P., for an order dismissing the complaint for lack of subject matter and personal jurisdiction. He also moves to dismiss on the ground that there is another suit pending between the parties for the same cause of action as that upon which the instant case is grounded. Alternatively, defendant requests that this case be transferred to the United States District Court for the Eastern District of Texas, pursuant to 28 U.S.C. § 1404.

Plaintiff, J. Roger Faherty ("Faherty"), is a citizen and resident of New York where he is involved in the investment banking and securities business. Plaintiff, Faherty & Faherty, Inc. ("F & F"), formerly named Faherty & Swartwood, Inc., is a New York corporation with its principal place of business in New York. Defendant Fender is a citizen and resident of Texas and is engaged in the business of drilling and operating oil and gas wells in the southwestern area of the United States.

In their complaint, plaintiffs allege that Fender, on December 27, 1979, brought an action against F & F, Faherty, and Farwood Management Company ("Farwood") in the District Court of Smith County, Texas, for breach of contract. This suit was purportedly based on several written agreements that the parties entered into for the exploration of oil and gas, with Fender seeking to recover drilling costs incurred in establishing wells at various sites in Texas and Louisiana. Plaintiffs allege that they were not parties to any agreement with Fender, that the exploration agreements

were between Fender and Farwood, and that Faherty executed these agreements solely in a representative capacity as president of Farwood. Plaintiffs further allege that they were served with process in New York by registered mail and that such service was based on fraudulent representations by Fender that plaintiffs had engaged in business in Texas. Plaintiffs did not appear in the Texas suit, and on March 28, 1980 Fender obtained a default judgment against them in the amount of $243,158.78.

On August 22, 1980, Fender instituted a second action against Farwood, Faherty, and F & F in Texas state court for breach of contract, seeking an additional $98,690.42 in unreimbursed drilling costs. Plaintiffs have made a limited appearance in that suit for the purpose of contesting personal jurisdiction and the action is currently pending.

Plaintiffs brought the instant action on December 22, 1982 and seek, in Count 1, a declaratory judgment, pursuant to 28 U.S.C. § 2201, to the effect that the Texas judgment rendered against them is void and unenforceable for lack of *in personam* jurisdiction. In Count 2, plaintiffs seek a declaratory judgment that the Texas judgment is void because it is based on false representations by Fender that F & F and Faherty were parties to the exploration agreements and subject to the jurisdiction of Texas courts. Count 3 is a claim for damages on behalf of Faherty for abuse of process. Count 4 asserts the same claim against Fender on behalf of F & F. In Count 5, Faherty seeks damages for intentional infliction of emotional distress, and in Count 6 he asserts a claim for prima facie tort.

I. *Subject Matter Jurisdiction*

■ Defendant's motion to dismiss for lack of subject matter jurisdiction is spurious. The complaint alleges complete diversity and a claim exceeding $10,000. Fender concedes that he is not a citizen of New York and does not challenge the amount in controversy. This, coupled with plaintiffs' allegations of New York citizenship, demonstrate complete diversity and the presence of subject matter jurisdiction.

■ Defendant's effort to dismiss on the ground that there is a pending action between the parties is also unavailing. Fender bases his argument on N.Y. CPLR § 3211(a)(4),[1] which provides for dismissal when "[t]here is another action pending between the parties for the same cause of action in a court of any state or the United States...." This rule is plainly inapplicable for two reasons.

First, the suits between the parties do not involve the same cause of action. In Texas, Fender again seeks to hold plaintiffs liable for breach of contract. Here, plaintiffs seek a declaration that the prior Texas judgment is null and void, along with damages for abuse of process, intentional infliction of emotional distress, and prima facie tort.

■ Second, and most important, it is the federal law of abstention, rather than the New York Civil Practice Law and Rules, that determines whether this court will exercise its jurisdiction or stay its hand in deference to a state court proceeding. Fender has failed to identify any reason why we should fail to exercise our jurisdiction.

Accordingly, defendant's motion to dismiss for lack of subject matter jurisdiction and on the ground of a pending state proceeding is denied.

II. *Personal Jurisdiction*

■ In determining personal jurisdiction in a diversity action, we apply the law of the forum state. *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 223 (2d Cir.1963) (en banc). It is uncontroverted that defendant Fender maintains no office, telephone listing, or mailing address in New York; that he is engaged in no continuous course of business here, either by himself or

---

1. New York Civil Practice Law and Rules § 3211(a)(4) (McKinney 1972 & Supp.1982) ("CPLR").

through employees or agents; and that he owns no real property in the state. Plainly, Fender is not "doing business" in New York and cannot be deemed to be present here for jurisdictional purposes.[2]

■ Accordingly, plaintiffs predicate jurisdiction on New York's long-arm statute, CPLR § 302(a), which provides, in pertinent part, as follows:

"Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

\*    \*    \*    \*    \*    \*

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. . . ."

The resolution of jurisdictional issues under this statute requires an examination of the "totality of the defendant's activities within the forum" and consideration of whether the defendant has "engaged in some purposeful activity in [the] State in connection with the matter in suit." *Longines-Wittnauer Watch Co. v. Barnes & Reinicke, Inc.,*

15 N.Y.S.2d 443, 457 n. 5, 261 N.Y.S.2d 8, 18 n. 5, 209 N.E.2d 68, *cert. denied,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965). *See also Sterling Nat'l Bank & Trust Co. v. Fidelity Mortgage Investors,* 510 F.2d 870, 873 (2d Cir.1975). Generally, a non-domiciliary is subject to the jurisdiction of New York courts if he has engaged in some purposeful activity within the state and there is a "substantial relationship" between this activity and the plaintiff's cause of action. *McGowan v. Smith,* 52 N.Y.2d 268, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981). The burden of proof with respect to jurisdiction rests with the party asserting it. *Lehigh Valley Indus., Inc. v. Birenbaum,* 527 F.2d 87, 92 (2d Cir.1975); *Ring Sales Co. v. Wakefield Engineering, Inc.,* 90 A.D.2d 496, 497, 454 N.Y.S.2d 745, 746 (2d Dept.1982); *Cato Show Printing, Inc. v. Lee,* 84 A.D.2d 947, 948–949, 446 N.Y.S.2d 710, 712 (4th Dept.1981). With these benchmarks in mind, we turn to the issue of personal jurisdiction as presented in this case.

A. *Section 302(a)(1)—Transaction of Business Within New York*

■ Between 1975 and 1978, Faherty and Fender entered into several agreements for the exploration of oil and gas in Louisiana and Texas. None of these agreements was negotiated by the parties in New York. Rather, Fender was contacted in Texas by Faherty's agent, Samuel Myers, who informed him that Faherty wanted to participate in Fender's drilling ventures. Faherty also visited Fender on several occasions in Texas. Thereafter, Fender mailed the letter agreements to Faherty in New York where Faherty executed them. It is for breach of these agreements that Fender has sued Faherty, F & F, and Farwood in Texas state court.

---

**2.** To sustain a finding that a nonresident defendant is "doing business" in New York, it must be shown that he conducts business activities in the State "with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917). Thus, occasional visits to New York, even to negotiate a contract, have been found to fall short of the "doing business" standard. *See Liquid Carriers Corp. v. American Marine Corp.,* 375 F.2d 951, 953 (2d Cir. 1967); *Meunier v. Stebo, Inc.,* 38 A.D.2d 590, 591, 328 N.Y.S.2d 608, 611 (2d Dept.1971).

During the course of their business relationship, Fender met with Faherty in New York on at least seven occasions. On October 7 and 8, 1975, they discussed their drilling venture, and Fender furnished Faherty a log for one of the wells. Additional meetings between the parties occurred in New York in June and December 1976 and December 1978 in which the exploration agreements were discussed. During one of their final discussions, Fender presented Faherty with an invoice allegedly representing Faherty's portion of some drilling costs.

Plaintiffs contend that their causes of action in this case stem from the oil and gas exploration agreements which were the subject of substantial discussions between Faherty and Fender in New York. Accordingly, plaintiffs claim that their causes of action arise out of Fender's transaction of business in New York, resulting in personal jurisdiction over Fender in this state, pursuant to CPLR § 302(a)(1). In response,

Fender maintains that plaintiffs' causes of action arise out of his alleged conduct in Texas, as opposed to his discussions with Faherty in New York, for jurisdictional purposes. Furthermore, he contends that those discussions did not constitute the transaction of business within the state under § 302(a)(1).

We assume that Fender's meetings with Faherty in New York constituted the transaction of business here.[3] However, we agree with Fender that plaintiffs' causes of action do not arise out of this transaction of business. Accordingly, we hold that jurisdiction over the defendant cannot be predicated on CPLR § 302(a)(1).

A defendant is subject to jurisdiction in New York if he transacts business within the state and there is a "substantial relationship" between this transaction of business and plaintiff's causes of action. *McGowan v. Smith, supra.*[4] This "substan-

---

**3.** It is far from certain that Fender transacted business in New York. When a cause of action arises out of a contract, the court must examine the totality of defendant's acts in the forum in relation to the contract, whether preliminary or subsequent to its execution, in determining whether it has jurisdiction over the defendant. *Longines-Wittnauer Watch Co. v. Barnes & Reinicke, Inc.,* 15 N.Y.2d 443, 457, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, *cert. denied,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965). That Faherty executed the letter agreements in New York is not determinative, for plaintiffs' purposeful act within the forum is insufficient to confer personal jurisdiction over defendant. *Galgay v. Bulletin Co.,* 504 F.2d 1062, 1065 (2d Cir.1974); *Dogan v. Harbert Construction Corp.,* 507 F.Supp. 254, 261 (S.D.N.Y.1980). Moreover, the contracts called for performance in Louisiana and Texas, rather than New York. Accordingly, we are left with the meetings between Faherty and Fender as the sole basis for jurisdiction.

Substantial contract negotiations by a defendant in New York are sufficient to confer jurisdiction over him in a suit for breach of contract. *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.,* 439 F.2d 428 (2d Cir.1971); *Liquid Carriers Corp. v. American Marine Corp.,* 375 F.2d 951 (2d Cir.1967); *Pneuma-Flo Systems, Inc. v. Universal Machinery Corp.,* 454 F.Supp. 858 (S.D.N.Y.1978); *Moser v. Boatman,* 392 F.Supp. 270, 274 (E.D. N.Y.1975); *ECC Corp. v. Slater Electric Corp.,* 336 F.Supp. 148 (E.D.N.Y.1971); *Karlin v. Avis,*

326 F.Supp. 1325 (E.D.N.Y.1971). *See also Reiner v. Schwartz,* 41 N.Y.2d 648, 394 N.Y. S.2d 844, 363 N.E. 551 (1977); *Longines-Wittnauer Watch Co. v. Barnes & Reinicke, Inc., supra.* However, such negotiations must be proven to have been significant in order to sustain jurisdiction; *i.e.,* during their discussions, the parties agreed to at least some of the material terms of the contract. *Lehigh Valley Indus., Inc. v. Birenbaum,* 527 F.2d 87 (2d Cir. 1975); *National Spinning Co. v. Talent Network, Inc.,* 481 F.Supp. 1243 (S.D.N.Y.1979); *Verner v. Moran Towing & Transportation Co.,* 258 F.Supp. 169 (S.D.N.Y.1966). Thus, mere discussions by a defendant in New York with respect to *existing* contracts are insufficient, standing alone, to confer jurisdiction over him. *Friedr. Zoellner (New York) Corp. v. Tex Metals Co.,* 396 F.2d 300 (2d Cir.1968); *Dogan v. Harbert Construction Corp., supra; McKee Electric Co. v. Rowland-Borg Corp.,* 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1977). *Cf. Weiss v. Greenburg,* 85 A.D.2d 861, 446 N.Y.S.2d 447 (3d Dept.1981). Fender's meetings with Faherty in New York, on the basis of the affidavits submitted by the parties, appear to have involved mere discussions rather than substantial negotiations.

**4.** Alternatively, courts state that there must be an "articulable nexus" between the business transacted and the cause of action. *McGowan v. Smith,* 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321 (1981); *Ring Sales Co. v. Wakefield Engineering, Inc.,* 90 A.D.2d 496, 497, 454 N.Y.S.2d 745, 746 (2d Dept.1982).

tial relationship" test is not satisfied by a remote causal connection between defendant's forum activity and plaintiff's claim.

For example, in *Rene Boas & Associates v. Vernier*, 22 A.D.2d 561, 257 N.Y.S.2d 487 (1st Dept.1965), plaintiff brought an action to recover commissions which he allegedly earned as a broker. He relied upon two contracts: a written agreement, negotiated and executed in New York by defendant, as general manager of a French corporation; and a subsequent oral agreement with respect to which defendant performed no act in New York. The court held that the written agreement was inapplicable to the plaintiff's claims for the services that plaintiff rendered did not come within its terms. However, the court held that personal jurisdiction could not be predicated on the oral agreement for the defendant neither negotiated, executed, nor performed it in New York. In addition, the court held that "[t]he fact that a prior written agreement was historically necessary to the inception of the subsequent oral agreement does not alone, for the purpose of the jurisdiction statute, support personal jurisdiction." Therefore, defendant's activities in New York in concluding the written agreement, although a link in the chain of causation leading to plaintiff's claims under the oral agreement, were insufficient to confer personal jurisdiction. In short, plaintiff's cause of action did not arise out of defendant's transaction of business for purposes of CPLR § 302(a)(1).[5]

Federal case law is consistent with the result in *Vernier*. For example, in *Gelfand*

*v. Tanner Motor Tours, Inc.*, 339 F.2d 317 (2d Cir.1964), plaintiffs, who were injured while riding a bus from Las Vegas to Arizona, sued the bus company, a foreign corporation, for negligence and breach of contract. In disposing of the question of whether there was jurisdiction over the defendants under § 302(a)(1), the court assumed that the defendants' sale of tickets to plaintiffs in New York was a transaction of business here. However, the court noted that the alleged negligence of the defendants, injury to plaintiffs, and every relevant occurrence connecting them took place three thousand miles from New York, where the tickets were purchased. In addition, the duty of due care owed to plaintiffs arose in Las Vegas. On these facts, the court held that plaintiffs' cause of action did not arise out of defendants' sale of tickets in New York. Consequently, there was no jurisdiction over defendants pursuant to § 302(a)(1).[6]

In *Xedit Corp. v. Harvel Indus. Corp.*, 456 F.Supp. 725 (S.D.N.Y.1978), the court was similarly confronted with the question of whether plaintiff's cause of action arose out of defendant's forum activity. On one occasion, defendant visited a trade show in New York and there discussed plaintiff's product with plaintiff. Thereafter, a sample of this product was shipped to defendant's place of business in New Jersey, and correspondence and telephone conversations took place between the parties. Plaintiff then sued for misappropriation of trade secrets. The court assumed that the one meeting in New York constituted a transac-

**5.** *See also Fontanetta v. American Bd. of Internal Medicine*, 421 F.2d 355 (2d Cir.1970). In that case, plaintiff brought suit, claiming that he was arbitrarily denied certification as a specialist in internal medicine. Certification was based upon the results of written and oral examinations. Plaintiff passed the written examination, which was given in New York, but failed the oral examination twice, in Philadelphia and St. Louis. Plaintiff predicated jurisdiction on the written test given in New York. The court held that where the written and oral examinations were distinct events, separated by geography and time, and plaintiff failed oral examinations which had no New York connection, plaintiff's cause of action arose out of the

oral examinations for jurisdictional purposes, and there was consequently no jurisdiction over defendant. That the written examination was a prerequisite to the oral examination was insufficient for purposes of § 302.

**6.** *See also, Brunette Sunapee Corp. v. Zeolux Corp.*, 228 F.Supp. 805 (S.D.N.Y.1964); *Simmons v. Gripple*, 36 A.D.2d 590, 318 N.Y.S.2d 363 (1st Dept.1971); *Bryant v. Finnish National Airline*, 22 A.D. 16, 253 N.Y.S.2d 215 (1st Dept.), *rev'd on other grounds*, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965); *American Radio Ass'n v. A.S. Abell Co.*, 58 Misc. 483, 296 N.Y.S.2d 21 (Sup.Ct.1968).

tion of business. However, it also noted that this meeting was the first encounter between the parties and that the information allegedly misappropriated by defendant was imparted to him in New Jersey after this meeting. The court concluded that the alleged tortious activities were sufficiently separated by time and geography, and sufficiently different in quality from defendant's New York activity, that the claim did not arise out of defendant's transaction of business in New York for purposes of § 302(a)(1). Although the meeting in New York was a link in the chain of events leading to plaintiff's claim, the court concluded that "something more is needed." 456 F.Supp. at 729 (*quoting* Weinstein, Korn and Miller, New York Civil Practice § 302.05 at 3–80).

In the instant case, there is also an insufficient nexus between plaintiffs' causes of action and defendant's forum activities. Plaintiffs contend that defendant conducted substantial negotiations in New York with respect to the oil and gas exploration agreements.[7] If this were true, and if plaintiffs' suit were for breach of these agreements, then there would undoubtedly be jurisdiction over defendant in New York.[8] In that case, defendant would have purposefully availed himself of the benefits and protection of New York law with respect to the contracts. Moreover, the cause of action for breach of contract would be based on the rights and duties established by the agreements, rights and duties that were the product of defendant's activity in New York. Here, however, the conduct of which plaintiffs complain was committed by defendant in the State of Texas. That is where defendant sued plaintiffs and allegedly obtained the unenforceable judgments, abused process, and committed the acts resulting in plaintiff Faherty's emotional harm. It is this conduct upon which plaintiffs' claims are based, and not the

contract.[9] Moreover, defendant's activities in Texas are separated significantly in time, geography, and quality from his activities in New York. Thus, plaintiffs' causes of action arise out of defendant's activities in New York only to the extent that such activities were a link in the chain of events leading to the Texas lawsuit. As the cases above indicate, however, this connection is insufficient to satisfy the requirement of § 302 that plaintiff's cause of action bear a "substantial relationship" to defendant's forum activity.

Accordingly, because plaintiffs' causes of action do not arise out of defendant's activities in New York, we hold that jurisdiction over defendant does not lie under CPLR § 302(a)(1).

B. *Section 302(a)(3)—Tortious Act Outside the State Causing Injury Within*

■ Plaintiffs also attempt to predicate jurisdiction on CPLR § 302(a)(3), which provides that one may be subject to suit in New York if he commits a tortious act outside the state, causing injury to persons or property within the state. Faherty avers the injuries sustained by plaintiffs in New York:

"A default judgment was entered against Farwood, Faherty & Faherty and myself in the amount of $243,158.73 on March 28, 1980. As a result of the entry of this default judgment, both I and Faherty & Faherty, have been severely injured. I have the constant threat of enforcement hanging over me. Faherty & Faherty has that problem as well as the additional problem of reporting the judgment to the various regulatory authorities to which it is subject. Moreover, we are both now put in the position of having to wait for Fender to commence suit

---

7. However, *see* note 3, *supra*.

8. *See American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.; Moser v. Boatman; ECC Corp. v. Slater Electric Corp.;* and *Karlin v. Avis,* in note 3, *supra*.

9. As plaintiffs themselves state, "[t]he gravamen of this action is defendant Fender's abuse of process in deceiving the Texas Court that jurisdiction was present and [sic] the plaintiffs here were liable to him." (Monaghan Affidavit ¶ 4.)

in New York before we can attack this judgment." (Faherty Affidavit, ¶ 9.) In addition, defendant's actions have allegedly impaired plaintiffs' credit and resulted in emotional distress on the part of plaintiff Faherty. For the reasons set forth below, these injuries do not constitute "injury to person or property within New York" for purposes of § 302(a)(3). Consequently, there is no jurisdiction over defendant under that statute.

Cases construing § 302(a)(3) may be divided into two categories; those involving physical injury and those concerning commercial loss. In any event, injury within the state for purposes of the statute must be "direct, and not remote or consequential." *Porcello v. Brackett*, 446 N.Y. S.2d 780, 85 A.D. 917 (4th Dept.1981).

For example, in *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 425 N.Y.S.2d 783, 402 N.E.2d 122 (1980), plaintiff, a New York corporation, sued another New York corporation for wrongful conversion of a shipment of cheese that had been shipped from Greece. Defendant Standard impleaded as a third-party defendant a Greek company, Synergal, that had processed the cheese and sold it to Standard. The court observed that the conversion occurred in Greece or on the high seas. Synergal's motion to dismiss for lack of personal jurisdiction was denied by the trial court. The Court of Appeals reversed, concluding that:

> "[T]he only possible connection between the claimed conversion and any injury or foreseeable consequence in New York is the fact that Standard is incorporated and maintains offices there. It has, however, long been held that the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction, *which must be based upon a more direct injury within the State and a*

> *closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there. . . ."*

49 N.Y.2d at 326, 425 N.Y.S.2d at 787, 402 N.E.2d at 126 (citations omitted) (emphasis added).

In *Weiss v. Greenburg*, 85 A.D. 861, 446 N.Y.S.2d 447 (3d Dept.1981), the court similarly held that pecuniary damage sustained in New York as a result of plaintiff's domicile does not constitute the requisite injury in the state for jurisdictional purposes. In *Weiss*, plaintiff commenced an action for legal malpractice which was allegedly committed by defendant law firm in Florida. Plaintiff claimed that defendant failed to protect adequately his interests in foreclosure litigation in Florida; as a result, plaintiff suffered pecuniary loss to a mortgage and note, both of which were located in New York. The court held that the presence of the mortgage and note in New York, as well as plaintiff's ownership of them while domiciled in the state, do not satisfy the requirement of injury to person or property in New York. The court also stated that the situs of non-physical commercial injury for jurisdictional purposes is where "the critical events associated with the dispute took place." 446 N.Y.S.2d 449 (*quoting American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428, 443 (2d Cir.1971). Since any alleged acts of malpractice took place in Florida and were related to a security interest in Florida property, the court held that injury did not occur in New York under CPLR § 302(a)(3).[10]

The same result obtains in cases involving physical injuries. For example, in *Black v. Oberle Rentals, Inc.*, 55 Misc. 398, 285 N.Y. S.2d 226 (Sup.Ct.1967), plaintiffs were involved in an automobile accident in Massachusetts, and defendant impleaded a third-

---

10. *See also, Lehigh Valley Indus., Inc. v. Birenbaum; American Eutectic Welding Alloys Sales Corp. v. Dytron Alloys Corp.; Friedr. Zoellner (New York) Corp. v. Tex Metals Co., supra* at n. 3; *American White Cross Laboratories, Inc. v. H.M. Cote, Inc.*, 556 F.Supp. 753 (S.D.N.Y.1983); *Glacier Refrig. Serv., Inc. v.*

*American Transp., Inc.*, 467 F.Supp. 1104 (E.D. N.Y.1979); *Chemical Bank v. World Hockey Ass'n*, 403 F.Supp. 1374 (S.D.N.Y.1975); *Moser v. Boatman, supra*, at n. 3. *Cf. Sybron v. Wetzel*, 46 N.Y.2d 197, 413 N.Y.S.2d 127, 385 N.E.2d 1055 (1978).

party defendant who manufactured an allegedly defective trailer out of state. The injury within New York was plaintiffs' permanent physical injury and loss of income. The trial court held that there was no jurisdiction over the third-party defendant because § 302(a)(3) "looks to the imparting of the original injury within the State of New York and not the resultant damage...." 55 Misc. at 400, 285 N.Y.S.2d at 229. Because the original physical injury was not sustained in New York, but in Massachusetts where the accident occurred, there was no injury within New York for jurisdictional purposes.[11]

In the instant case, plaintiffs fail to show direct injury to persons or property within New York. The direct injury here—the rendering of the default judgment—occurred in Texas. The reporting obligations, credit impairment, and emotional distress which plague plaintiffs are clearly consequences of that default judgment. These injuries would be sustained by plaintiffs irrespective of where they reside or do business. The injuries are currently endured in New York solely because plaintiffs are present here. This type of derivative injury, which stems merely from plaintiffs' residence within the forum, is insufficient to confer jurisdiction under § 302(a)(3).

Accordingly, because there is no "injury to persons or property within New York," we hold that there is no jurisdiction over defendant under CPLR § 302(a)(3).

III. *Defendant's Motion to Transfer*

 Alternatively, defendant moves to transfer this case to the Eastern District of Texas, pursuant to 28 U.S.C. § 1404(a). There is no question that this action "might have been brought" there, for Finder is a resident of the State of Texas and engaged in substantial business there.[12] However, plaintiffs object strenuously to trying this

case in Texas, citing the inconvenience involved and the apparent inequity of being "compelled" to bring an action where they themselves are not subject to suit. Therefore, in view of our disposition of this case, defendant's motion to transfer is denied.

Accordingly, defendant's motion to dismiss for lack of personal jurisdiction is granted; defendant's motion to dismiss for lack of subject matter jurisdiction or to transfer is denied.

So ordered.

---

11. *See also, McGowan v. Smith, supra,* n. 4; *Porcello v. Brackett,* 85 A.D.2d 917, 446 N.Y. S.2d 780 (4th Dept.1981); *Attanasio v. Ferre,* 93 Misc.2d 661, 401 N.Y.S.2d 685 (Sup.Ct. 1977).

12. Title 28, United States Code, Section 1404(a), provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."