**Lars HEDLUND and Dennis Carlson, d/b/a Scandia Enterprises, a partnership, Plaintiffs,**

v.

**PRODUCTS FROM SWEDEN, INC., and Travarauktiebolaget A. Moberg & Company, a Swedish Corporation, Defendants.**

No. 87 CIV 1260 (LBS).

United States District Court, S.D. New York.

Sept. 7, 1988.

Scalise, Scism, Sandre & Uhl, Des Moines, Iowa, for plaintiffs appearing pro hac vice; Ann Fitzgibbons, of counsel.

Kriss & Vecchione, New York City, for plaintiffs; Michael Vecchione, of counsel.

Stephens, Buderwitz & Baroni, White Plains, N.Y., for defendants; Mark M. McMillin, of counsel.

## OPINION

SAND, District Judge.

This motion to dismiss arises in an action involving distribution rights for Swedish log cabin kits in the United States. Plaintiffs bring suit against Defendant Products from Sweden ("PFS"), a New York corporation, for breach of an oral contract and tortious interference with a business relationship. Plaintiffs assert only the claim for tortious interference against Defendant Travarauktiebolaget A. Moberg & Co. ("Moberg"), a Swedish corporation.

Moberg here moves under Federal Rule of Civil Procedure 12(b)(2) to dismiss this action for lack of in personam jurisdiction. Plaintiffs allege jurisdiction under New York's long-arm statute, N.Y. Civil Procedure Law and Rules ("CPLR") § 302(a)(1) and § 302(a)(3)(ii) (McKinney 1972 & Supp. 1988), and Moberg denies that such jurisdiction exists. We find that Plaintiffs have made a prima facie showing that jurisdiction does exist under § 302(a)(1), and thus we deny the motion.[1]

## BACKGROUND

Plaintiffs Lars Hedlund and Dennis Carlson, and their partnership Scandia Enterprises ("Scandia"), are citizens of Iowa with their principal place of business in Iowa. Scandia sells and distributes Swedish log cabin kits in the United States.

Defendant Moberg is a Swedish corporation engaged in the manufacture and sale

---

**1.** In view of our disposition of the motion, we do not consider Plaintiffs' contention that juris-diction also exists under § 302(a)(3)(ii).

of lumber and building materials. Moberg's principal place of business and registered office has always been in Sweden. Moberg has never been licensed to do business in New York or in the United States, and it has no employees, officers, directors, or assets in New York or in the United States. Affidavit of Ulf Norgren, President of Moberg, in support of motion, dated June 6, 1988, at ¶¶ 5–9. In February 1984, at the time of the alleged tort, Moberg was a wholly-owned subsidiary of KF Industri, Ltd., a Swedish corporation. Moberg was subsequently sold to Ulf Norgren in December, 1986.

Defendant PFS is a New York corporation with its principal place of business in New York. It was and still is a wholly-owned subsidiary of the same KF Industri, Ltd. Moberg acknowledges in its moving papers that it did and still does sell log cabin kits in Sweden to PFS, which in turn imports the kits for sale in the United States. Moberg asserts, however, that the two corporations have always been entirely independent. Norgren Affidavit, at ¶¶ 13–14.

Plaintiffs allege that pursuant to an oral agreement in March, 1983 with Gilbert Sundstrom, the manufacturer of the log cabin kits, they had exclusive distribution rights for the kits in North America. They acknowledge that Moberg owned the exclusive distribution rights in Europe, but assert that prior to March, 1983, the kits were not distributed in North America. Complaint, at ¶ 8. Plaintiffs further allege that in September, November, and December, 1983,[2] they met with PFS, Moberg, and Sundstrom in New York to negotiate the formation of a joint venture agreement between Scandia and PFS to distribute the Swedish log cabin kits in the United States. Plaintiffs allege that Moberg played a significant role in these negotiations, and that "it was agreed that Moberg was to make the necessary arrangements with Gilbert Sundstrom ... for the sale of lumber for the production of the log cabin kits." Complaint at ¶ 11. Moberg contends that it was not a participant in the negotiations, but merely an observer.

According to Plaintiffs, in early February, 1984, PFS breached its contract with Plaintiffs by announcing for the first time that Plaintiffs would be only sales representatives for PFS rather than partners in a joint venture, and that Plaintiffs would receive a 10% commission on the sale of any log cabins rather than the nearly equal division of profits previously agreed upon. Later that month, after this alleged breach, Plaintiffs notified Mr. Sundstrom that Scandia wished to continue with its prior oral agreement with him, even in the absence of a joint venture agreement with PFS.

Plaintiffs claim that at this time PFS and Moberg conspired to cause Sundstrom to breach his contract with Scandia by intimidating him and threatening to terminate all their business dealings with him. Plaintiffs allege that Defendants did this so that PFS would obtain the exclusive importing and distribution rights in the United States.

## DISCUSSION

■■■ Where a motion brought under Rule 12(b)(2) is decided on pleadings and affidavits, without an evidentiary hearing, the plaintiff need only make a prima facie showing that jurisdiction exists. *CutCo Industries v. Naughton*, 806 F.2d 361, 364–65 (2d Cir.1986). All pleadings and affidavits are construed in the light most favorable to the plaintiff, and all doubts are resolved in its favor. *Id.; Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). A plaintiff who succeeds in making this prima facie showing still bears the burden of establishing in personam jurisdiction at trial by a fair preponderance of the evidence. *Morse Typewriter Co. Inc. v. Samanda Office Communications Ltd.*, 629 F.Supp. 1150, 1151–52 (S.D. N.Y.1986) (*citing Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) and *Teachers Ins. & Annuity Ass'n of America v. Butler*, 592 F.Supp. 1097, 1099 (S.D.N.Y.1984)).

■■■ In ruling on a motion to dismiss for lack of personal jurisdiction, a court

---

**2.** We note that Plaintiffs' memorandum of law in response to this motion states, at page 6, that "... Moberg came into the State and City of New York on *two* separate occasions in September and November of 1983 to meet with the Plaintiffs and with Defendant PFS to negotiate and enter into the contract alleged in this complaint." (Emphasis added.) The difference between two and three visits to New York would not change the result here.

must consider whether there is a statutory basis for jurisdiction and whether the exercise of personal jurisdiction under state law comports with due process under the fourteenth amendment. As the Supreme Court has often reiterated, for due process to be satisfied, the defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *see Asahi Metal Ind. Co. v. Superior Ct. of California*, 480 U.S. 102, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). To support long-arm jurisdiction, a plaintiff must show that the nondomiciliary defendant performed "some act by which [it] purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal Ind. Co. v. Superior Ct.*, 107 S.Ct. at 1031 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) and *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)).

New York's long-arm statute was enacted in response to the decisions establishing that due process is satisfied only if the nondomiciliary defendant has purposefully availed itself of the benefits of the forum state, if it has sufficient minimum contacts with that state, and if it should therefore reasonably expect to be called to defend its actions in the courts of that state. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 198, 522 N.E.2d 40, 43 (1988). Long-arm jurisdiction under CPLR 302 does not exhaust the full jurisdictional potential permissible under the federal constitution. CPLR 302, Practice Commentary at 60 (McKinney 1972).

### 1) *Jurisdiction under CPLR § 302(a)(1)*

Plaintiffs contend that jurisdiction exists over Moberg under CPLR § 302(a)(1), which provides, in relevant part:

"As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor, or administrator, who in person or through an agent:

(1) transacts any business within the state or contracts anywhere to supply goods or services in the state."

To come within this section of the statute, a defendant must have engaged in "purposeful activities" within the state, and there must be a "substantial relationship" between those activities and the transaction out of which the cause of action arose. *Talbot v. Johnson Newspaper Corp.*, 71 N.Y.2d 827, 527 N.Y.S.2d 729, 731, 522 N.E.2d 1027, 1028 (1988) (*citing McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981)). It is not disputed that § 302(a)(1) authorizes a court to exercise jurisdiction over a nondomiciliary for a tort claim arising out of the transaction of business in New York. *See Kreutter v. McFadden Oil*, 527 N.Y. S.2d at 198, 522 N.E.2d at 43.

Plaintiffs claim that the three meetings in New York constitute purposeful activities amounting to the transaction of business by Moberg because they involved contract negotiations in which Moberg played an important role, and that the tort alleged is sufficiently related to this transaction to bring Moberg within the statute. Moberg contends that it did not attend the New York meetings as a participant, and that, therefore, it did not transact business in New York. It further contends that, in any event, the tort alleged to have occurred in Sweden is not related to its attendance at any of the meetings in New York.

#### a) Transaction of Business

Plaintiffs allege that Moberg's representatives entered into an agreement in New York, ancillary to the joint venture agreement between Plaintiffs and PFS, to provide Sundstrom with lumber in Sweden for use in producing the log cabins that were at the heart of both of the principal oral contracts alleged here: 1) the contract between Plaintiffs and Sundstrom for ex-

clusive United States rights to sell the log cabins, and 2) the contract between Plaintiffs and PFS to enter into a joint venture to sell those same log cabins. Plaintiffs claim that it was one of Moberg's representatives who recorded the minutes of the November 18, 1983 meeting, and they provide a copy of those minutes in Swedish and in English translation. The minutes show two representatives of Moberg to have been present, and they further state:

"2. All parties present at the meeting are needed in order to make the export of our cabins to the U.S.A. a success. PFS will be the general importer. To get an immediate start and further positive development, it is imperative that all parties be open in this and the coming discussions."

Affidavit of Lars Hedlund, in opposition to motion, dated June 29, 1988, at Ex. A. From the minutes it also appears that Moberg agreed to investigate matters such as cost and availability of certain items and to bear the expenses for two types of brochures, and that Moberg was to receive a portion of the selling price of the cabins. *See id.*

We find that Moberg's attendance at these business meetings in New York, as described by Plaintiffs, supported by the notes of the November meeting, is sufficient for a prima facie showing that Moberg "transacted business" in New York for the purposes of the long-arm statute. *See CutCo Ind. v. Naughton,* 806 F.2d 361, 367–68 (two visits to New York during which "business discussions did take place which were instrumental in [defendant's] decision to open additional franchises" were jurisdictionally significant); *Faherty v. Fender,* 572 F.Supp. 142, 146 and n. 3 (S.D.N.Y.1983) (Court assumed that seven meetings in New York to discuss oil and gas exploration agreements constituted transaction of business, but noted that mere discussions are not sufficient and that "substantial negotiations" are required); *Xedit Corp. v. Harvel Industries Corp., Fidelipac,* 456 F.Supp. 725, 728 (S.D.N.Y. 1978) (single meeting in New York where possibility of a business relationship was explored was transaction of business). The question is thus whether Plaintiffs have met the second requirement under § 302(a)(1) that the claim against Moberg arise out of those transactions. *See CutCo Industries v. Naughton,* 806 F.2d at 365; *Alexander and Alexander, Inc. v. Muldoon & Co.,* 685 F.Supp. 346, 353 (S.D.N.Y. 1988).

### b) Substantial Relationship

Plaintiffs contend that Moberg played a substantial role in the negotiation in New York of the joint venture agreement between Scandia and PFS for sales and distribution of Swedish log cabin kits in the United States. They claim that during the negotiations it appeared that Moberg and PFS were acting on behalf of each other. They further allege that Moberg and PFS, in Sweden, threatened Sundstrom with cessation of all business relations unless Sundstrom gave PFS the exclusive importing and distribution rights for the log cabin kits in North America.

The "substantial relationship" test in tort cases, particularly where the tort alleged is not said to have been committed "in the course of" transacting business in New York (*see Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 764 (2d Cir.1983)), is difficult to satisfy. *See, e.g., Talbot v. Johnson Newspaper Corp.,* 71 N.Y.2d at 829, 527 N.Y.S.2d at 730, 522 N.E.2d at 1028 (no substantial relationship between defendant daughter's attendance at a New York university and subsequent allegedly defamatory comments about university coach by defendant daughter and letters written on same subject by defendant father); *McGowan v. Smith,* 52 N.Y.2d at 272, 437 N.Y.S.2d at 645, 419 N.E.2d at 323 (no articulable nexus between defendant's visits to New York for general marketing research and plaintiff's personal injury in Canada from defendant's defective product bought in New York); *Fontanetta v. American Board of Internal Medicine,* 421 F.2d 355, 358–59 (2d Cir.1970) (physician's claim against defendant testing service based on oral examinations administered and graded outside New York, which physician failed, did not arise from the written examinations that he had taken and

passed in New York); *Gelfand v. Tanner Motor Tours, Ltd.,* 339 F.2d 317, 321–22 (2d Cir.1964) (insufficient nexus where plaintiff purchased tickets for bus trip from agents in New York and claim arose out of bus accident in Arizona); *Alexander & Alexander v. Muldoon & Co.,* 685 F.Supp. at 353 (no substantial relationship between failure to make insurance filings and misrepresentations concerning failure to file, and series of meetings in New York, including particularly a subsequent meeting where disagreements over insurance coverage were discussed); *Auto Sunroof of Larchmont, Inc. v. American Sunroof Corp.,* 639 F.Supp. 1492, 1496–97 (S.D.N.Y. 1986) (action for tortious interference with contractual relations involving a franchise agreement limiting defendant's right to contract with New York auto parts distributors not sufficiently related to defendant's sales of auto parts to New York customers,. because the contacts alleged did not "directly constitute the basis for [the] cause of action"); *Faherty v. Fender,* 572 F.Supp. at 145–48 (cause of action against defendant for suing, obtaining unenforceable judgments, abusing process, and committing the acts resulting in plaintiff's emotional harm in Texas did not arise from New York negotiations that led to the agreements on which the defendant's suits were based); and *Xedit Corp. v. Harvel Ind.,* 456 F.Supp. at 728–29 (claim for misappropriation of trade secrets did not arise out of defendant's earlier visit to New York for trade show and discussion of product with plaintiff).

This Court, in interpreting New York's long-arm statute, has stated:

> "The defendants' New York activities must be substantially proximate to the allegedly unlawful acts before the cause of action can be said to arise out of those activities. This determination is necessarily one of degree, informed by considerations of public policy and fundamental fairness."

*Xedit Corp. v. Harvel Ind.,* 456 F.Supp. at 729. In that case, the Court found that the allegedly tortious activities were "sufficiently separated by time and geography, and sufficiently different in quality, from

defendants' New York activities" that the claim did not arise out of those New York activities.

■ There is an undeniable relationship between the activities of Moberg in New York and the tort alleged to have occurred in Sweden. The determination as to whether that relationship is substantial enough to support jurisdiction is a matter of degree. The log cabins at issue in the two underlying contracts are the same log cabins. The parties involved in the negotiations surrounding the alleged joint venture contract are the same as those involved in the alleged tortious interference with the exclusive distribution contract. The issue at the heart of both disputes is control of the distribution of the log cabins in the North American market.

Resolving all doubts in favor of the Plaintiffs, as we must do at this procedural stage, we find that the alleged tortious interference in contractual relations as to the Scandia/Sundstrom contract grows out of and is intimately intertwined with the interpretation of the Scandia/PFS contract negotiated in New York. Moberg's ancillary agreement is an element of the total agreement between PFS and Plaintiffs, the meaning of which is in dispute.

The alleged attempt to cause Sundstrom to break an exclusive distribution agreement with Plaintiffs in order to enter such an agreement with PFS and the dispute over the terms of the New York contract share the quality of being directed at obtaining or keeping control of the North American market for PFS. If the Plaintiffs possess exclusive North American distribution rights in the cabins, PFS cannot benefit from a contract making Plaintiffs mere sales representatives receiving a 10% commission. PFS, and Moberg to the extent that its interests are seen to coincide with those of PFS, thus has an interest in preventing Sundstrom from granting exclusive distribution rights to Plaintiffs and in causing him to grant them to PFS. While such an interest could theoretically exist even absent the contract, the circumstances alleged here strongly suggest that this interest arises out of the dispute over the

meaning of the contract entered into in New York.

While "[t]he 'substantial relationship' test is not satisfied by a remote causal connection between defendant's forum activity and plaintiff's claim," (*Faherty v. Fender*, 572 F.Supp. 142, 146–47 (S.D.N.Y. 1983)), we believe that the pleadings and affidavits before the Court, looked at in the light most favorable to the Plaintiffs, establish a prima facie case that the alleged tort arose out of the transaction of business in New York.

Defendant Moberg's motion to dismiss is hereby denied without prejudice to renewal at trial.

SO ORDERED.