**STRATAGEM DEVELOPMENT CORPORATION, Plaintiff,**

v.

**HERON INTERNATIONAL N.V. and Heron Properties, Inc., Defendants.**

**HERON PROPERTIES, INC., Plaintiff,**

v.

Simon R. SHANE, Professional Capital Management, Inc. and Property Advisory Group, Inc. and First Eastern Developments Limited, Defendants.

Simon R. SHANE, Professional Capital Management, Inc. and Property Advisory Group, Inc., Third–Party Plaintiffs,

v.

WEATHERALL, GREEN & SMITH (NEW YORK), INC., Weatherall, Green & Smith, Kohn Pedersen Fox Associates, P.C., Arimino One, Ltd., Arimino, Ltd., the Overton La Cholla Joint Venture, and Fred Pirkey, Third–Party Defendants.

Nos. 90 Civ. 6328 (SWK), 90 Civ. 7237 (SWK).

United States District Court, S.D. New York.

Feb. 28, 1994.

Richards & O'Neil, New York City by
Robert J. Ward, for Heron Properties, Inc.
and Heron Intern. N.V.

Stein, Zauderer, Ellenhorn, Frischer &
Sharp, New York City by Hal S. Shaftel,

Louis M. Solomon, for Stratagem Development Corp., Simon R. Shane, Professional Capital Management, Inc. and Property Advisory Group, Inc.

Brody & Fabiani, New York City by John V. Fabiani, Jr., for Weatherall, Green & Smith (New York), Inc. and Weatherall, Green & Smith.

Bernstein, Weiss, Coplan, Weinstein & Lake, New York City by Norman Coplan, for Kohn Pedersen Fox Associates, P.C.

### MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

These related actions involve claims for breach of two real estate joint venture agreements. Presently before the Court is an appeal from a Memorandum Opinion and Order issued by Magistrate Judge James C. Francis IV on January 6, 1993 (the "January 6th Opinion") in 90 Civ. 6328, 1993 WL 6216 (SWK) (the "Initial Action"). The third-party defendants in 90 Civ. 7237, 1993 WL 6216 (SWK) (the "Related Action") have also submitted objections to two Reports and Recommendations issued by Magistrate Judge Francis on April 19, 1993 (the "April 19th Report") and July 15, 1993 (the "July 15th Report"). The Court will consider the Opinion and each Report in turn.

### BACKGROUND

In 1984, predecessors of Heron Properties, Inc. ("Heron") and Stratagem Development Corporation ("Stratagem") executed an agreement (the "Phase I Joint Venture Agreement") to develop a Manhattan office building ("Heron Tower I"). The next year, predecessors of the same parties entered into an additional agreement (the "Phase II Joint Venture Agreement") to develop a second office building ("Heron Tower II") on an adjacent site. Heron hired Simon R. Shane ("Shane"), who was the chairman and principal of Stratagem, Professional Capital Management, Inc. ("PCM"), Property Advisory Group, Inc. ("PAG") (collectively, the "Stratagem parties") and First Eastern Developments Limited ("FED"), to act as the "own-

er's representative" and provide commercial real estate expertise for the two projects.

In March 1988, Heron hired an architectural firm, Kohn Pedersen Fox Associates, P.C. ("KPF"), to design Heron Tower II.[1] Heron and KPF entered into a contract (the "KPF Contract"), pursuant to which KPF agreed to meet a project budget of approximately $17 million, and to make design modifications if the project exceeded the budget by more than ten percent. *See* the KPF Contract, annexed to the Amended Answer To Second Amended Complaint, Counterclaims and Third–Party Complaint in the Related Action as Exh. "A." In the KPF Contract, Heron designated PCM to act as its authorized representative with respect to KPF, *see id.* at ¶ 4.4, and KPF agreed to "cooperate" with PCM. *Id.* at ¶ 2.6.2. As part of this agreement, KPF assumed responsibility to compensate Heron and its representatives for any errors or misconduct committed by it. Thus, paragraph 12.16 of the KPF Contract states:

> The Architect shall indemnify and hold harmless the Owner and its ... representatives ... from and against any and all claims, ... lawsuits, ... arising out of or incident to any property damage ... which are the result of any breach of this Agreement, misconduct or negligent act, omission or error of the Architect....

*Id.* at ¶ 12.16. Furthermore, paragraph 12.17 of the KPF Contract states that KPF

> acknowledges that if it shall breach its obligations hereunder, or negligently perform its services hereunder, the Owner may sustain substantial damages as a result thereof, in which the Architect shall be responsible for the damages so sustained.

*Id.* at ¶ 12.17. In its capacity as "owner's representative," PCM conducted weekly meetings with KPF.

By June 1990, Heron was dissatisfied with the services provided by Stratagem. As a result, on June 27, 1990, Heron sent a notice of termination to Stratagem, which stated:

---

**1.** Prior to being selected as architect for Heron Tower II, KPF also served as the architect for Heron Tower I.

Please be advised that effective immediately we are hereby terminating the Phase II Joint Venture Agreement, dated March 22, 1985....

*See* Letter from Heron to Stratagem of 6/27/90, annexed to the complaint in the Initial Action as Exh. "D." Thereafter, Heron allegedly failed to pay Stratagem $1,123,-483.30, representing the ten remaining installments of Stratagem's fee due under the Phase II Joint Venture Agreement.

In October 1990, Stratagem commenced the Initial Action, charging Heron and its affiliate, Heron International N.V. ("Heron International") with breach of the Phase II Joint Venture Agreement. Heron subsequently commenced the Related Action against the Stratagem parties and FED, asserting several claims for tort and breach of contract relating to both Heron Towers I and II.[2] Thereafter, in November 1992, the Stratagem parties commenced a third-party action (the "Third–Party Action") for indemnification and/or contribution against, *inter alia*, third-party defendants Weatherall, Green & Smith (New York), Inc. ("WGS–NY"), Weatherall Green & Smith ("WGS") (collectively, the "Weatherall parties")[3] and KPF.[4]

## I. *The Related Action*

In the First Claim for Relief of the Second Amended Complaint, Heron alleges that, as the "owner's representative" for Heron Tower II, PCM was responsible for, among other things,

(A) Supervising architects, structural engineers and other professionals, and in finalizing their contracts; ... (D) Performance schedules, quality control and realistic budget development with the architects, engineers and contractors; ... (F) Monitoring project meetings with the architects and contractor to control budgets; ... (H) Supervising bidding and budget control; [and] (I) Monitoring construction progress as against schedules and projected costs.

*See* Second Amended Complaint at ¶ 27. According to Heron, PCM violated its duties as "owner's representative" by failing to adequately supervise the construction project. Heron alleges further that PCM failed to provide certain construction management services by, among other things, (1) miscalculating, overstating and failing to revise "calculations of usable and rentable square footage," *id.* at ¶ 39(D); (2) failing to "adequately monitor and report on projected costs," *id.* at ¶ 39(E); and (3) refusing to provide "needed and material information, including cost information, to Heron about the Heron Tower II construction project," *id.* at ¶ 40.

The Second through Fifth Claims for Relief of the Second Amended Complaint relate to Heron Tower I. For its Second Claim for Relief, Heron alleges that PCM negligently supervised and performed tenant improvement work for the space at Heron Tower I. Heron also claims, in its Third Claim for Relief, that PCM failed to file revised zoning calculations and drawings to build a mezzanine level in Heron Tower I. For its Fourth Claim for Relief, Heron alleges that PCM failed to arrange for the payment of subcontractors, thereby causing liens to be placed on the Heron Tower I project. The Fifth Claim for Relief alleges that PAG, as property manager for Heron Tower I, failed to collect rent and other fees and disbursements from tenants, and improperly calculated rent increases.

For its Seventh, Eighth and Ninth Claims for Relief, Heron alleges that the Stratagem parties "misrepresented and concealed material facts regarding the economic viability of the Heron Tower II project." *Id.* at ¶ 103. Specifically, Heron claims that, beginning in June 1988, the Stratagem parties prepared economic studies ("Viability Studies") to forecast the profitability of the Heron Tower II project. Heron contends that the Stratagem parties, either intentionally or negligently, misrepresented estimates concerning the via-

---

**2.** Heron filed an amended complaint on May 3, 1991, and on October 15, 1992, filed a second amended complaint (the "Second Amended Complaint").

**3.** WGS–NY acted as the exclusive leasing agent for Heron Tower I, and also provided leasing

advice with respect to Heron Tower II. WGS is a London-based partnership that allegedly was involved in Heron Towers I and II both directly and by exercising control over WGS–NY.

**4.** FED is not named as a party in the third-party complaint.

bility of the Heron Tower II project in these studies.

Heron's Sixth, Tenth and Eleventh Claims for Relief state causes of action against the Stratagem parties and FED. The Sixth Claim for Relief alleges that the Stratagem parties and FED fraudulently marked up charges made to them by an employee. The Tenth and Eleventh Claims for Relief allege that the Stratagem parties and FED breached their fiduciary duties, and that Heron is entitled to an accounting of all funds received by the Stratagem parties and FED in connection with the Heron Towers.

The Twelfth through Sixteenth Claims for Relief against Shane allege tortious interference with the contracts between Heron and PCM, unjust enrichment, conversion, failure to remit rent monies and failure to pay certain taxes.

## II. The Third–Party Complaint

In the third-party complaint, the Stratagem parties claim that any liability attaching to them was the result of the third-party defendants' wrongful conduct. Thus, while Heron's First Claim for Relief alleges that the Stratagem parties violated their duties by allowing the Heron Tower II project to exceed its budget, see Second Amended Complaint at ¶ 34, the Stratagem parties allege, in turn, that "KPF repeatedly resisted efforts to implement design modifications suggested by the [Stratagem parties] aimed at reducing the costs of the project in a timely manner." See Third–Party Complaint at ¶ 229. Similarly, the Stratagem parties claim that KPF was responsible for any miscalculations in the construction cost and square footage estimates, as well as any delays in construction. The third-party complaint also alleges that the Stratagem parties relied on KPF and the Weatherall parties to provide underlying data for the Viability Studies.

With respect to Heron Tower I, the Stratagem parties contend that KPF was respon-

sible for ensuring that the appropriate documentation for building a mezzanine level was in place. In addition, the third-party complaint alleges that the Weatherall parties misrepresented to a prospective lessee that a mezzanine area could be constructed above the ground floor space.

The Court now has before it an appeal from Magistrate Judge Francis's January 6th Opinion resolving certain discovery disputes between Heron and Stratagem in the Initial Action. Third-party defendant WGS has submitted objections in the Related Action to the Magistrate Judge's April 19th Report denying WGS's motion to dismiss for lack of personal jurisdiction and failure to execute proper service. Third-party defendant KPF has also submitted objections to Magistrate Judge Francis's July 15th Report, which denied KPF's motion to dismiss for failure to state a claim upon which relief could be granted, or in the alternative, to sever the third-party action and have it stayed pending the disposition of the main action.

## DISCUSSION

### I. The January 6th Opinion

#### A. The Dispute [5]

In the January 6th Opinion, Magistrate Judge Francis resolved certain discovery disputes concerning documents that Heron contended were subject to the attorney-client privilege. Heron initially produced these documents in September 1991, in response to a document request submitted by Stratagem on June 10, 1991. In October 1991, while reviewing the documents produced to Stratagem's counsel in anticipation of several upcoming depositions, Heron's counsel uncovered a privileged document. After this discovery, two Heron attorneys reviewed the entire document production and found that they had produced multiple copies of five privileged documents (the "Five Documents") to Stratagem.[6] Accordingly, Heron request-

[5]. Unless otherwise indicated, the following undisputed facts are taken from Stratagem's Objections to the Memorandum and Order of the Magistrate Judge dated January 6, 1992, Heron's Response to Objections to the Memorandum and Order of Magistrate Judge Francis, dated January 6, 1992, and the transcript of an evidentiary

hearing held before the Magistrate Judge on October 29, 1992 ("Tr.").

[6]. Heron claims that the post-it notes identifying the Five Documents as privileged were accidently removed prior to the document production. Tr. at 15.

ed that Stratagem return the privileged documents.

Stratagem refused to return the documents, and as a result, Heron moved to compel. In a Memorandum Opinion and Order dated December 6, 1991 (the "December 6th Opinion"), Magistrate Judge Francis directed Stratagem to return the Five Documents, rejecting Stratagem's claim that Heron had waived any privilege by producing the documents during discovery. Specifically, the Magistrate Judge found that "[i]n light of the scope of discovery, the small number of privileged documents produced, and the reasonable efforts made by Heron to preserve the privilege, the disclosure must be characterized as inadvertent." See December 6th Opinion at 6.

Subsequent to a deposition in which Stratagem attempted to question a witness about certain additional Heron documents that appeared to be privileged on their face, Heron's counsel again reviewed all of the documents produced to Stratagem. In a letter dated April 10, 1992, Heron advised Stratagem that over 150 privileged documents (the "150 Documents") had been inadvertently produced, and requested that Stratagem agree to return them. Stratagem refused to return the documents, claiming that "[t]he documents are either not privileged, or any privilege has been waived." See letter from Louis M. Solomon to Robert J. Ward of 4/23/92, annexed to the affidavit of Robert J. Ward, sworn to on February 8, 1993 ("Ward Aff."), as Exh. "A."

In light of Heron's contention that it had inadvertently produced the 150 Documents during discovery, counsel for Stratagem wrote to the Court on May 4, 1992, contending that the December 6th Opinion should be overruled, or "[i]n the alternative, this Court should return this motion to the Magistrate Judge for reconsideration in light of the newly disclosed facts." See letter from Louis M.

Solomon to the Honorable Shirley Wohl Kram of 5/4/92, at 3. Thereafter, on May 6, 1992, Heron wrote a letter to the Court, indicating that "we had continued our investigation and had concluded that most of the documents were, in fact, not privileged." See letter from Robert J. Ward to the Honorable Shirley Wohl Kram of 5/6/92, annexed to the Ward Aff. as Exh. "C" (emphasis added). According to Heron's counsel, merely six of the 150 Documents were privileged (the "Six Documents").[7] As a result of these new facts, the Court remanded the privilege issue with respect to the original Five Documents to the Magistrate Judge for any necessary reconsideration.

In the interim, as Stratagem declined to return the Six Documents, Heron again moved to compel. Stratagem, in turn, sought an order permitting it to retain and utilize the Six Documents, as well as the original Five Documents (collectively, the "Eleven Documents").[8] Stratagem also claimed that disclosure of the 144 Documents resulted in a waiver as to all other communications related to the same subject matter.

## B. The January 6th Opinion

After conducting an evidentiary hearing on October 29, 1992, Magistrate Judge Francis issued his January 6th Opinion, holding that the Five Documents were privileged, and that five out of the Six Documents were also privileged. In reaching his conclusion, the Magistrate Judge determined that the disclosure was inadvertent. With respect to the 150 Documents, the Magistrate Judge noted that

[w]hile Heron's flip-flopping on these documents is unfortunate, there is no evidence that it was done in bad faith or as a litigation tactic.

---

7. Heron contends that 144 documents of the 150 Documents (the "144 Documents") are not privileged because either they (1) have been shown to third parties prior to production in this action; (2) are simply cover letters; (3) are not intended to be kept confidential; or (4) do not seek or provide legal advice. Tr. at 24–26.

8. The Court notes that several duplicates of the Eleven Documents were also produced during discovery. The following Bates nos. identify the documents at issue: HI 14428, HII 05420–21, HII 05447, HII 05436–38, HII 06415–17, HII 10319–21, HII 05435, HI 14447, HI 00295, HII 06414, HII 10318, HII 06413, HII 10317, HI 00294, HI 22410, HI 22414, HI 22415, HI 22418, HII 22319–20, HI 15354–59, HI 14757–62, HI 16464–69, HI 03406, HI 09349, HI 09350–52.

*See* January 6th Opinion at 5. The Magistrate Judge found further that

> [t]he precautions taken by Heron's counsel were reasonable. They engaged in an initial document review, a second after the initial inadvertent disclosure was discovered, and a third when additional apparently privileged documents appeared at deposition.

*Id.*

Second, Magistrate Judge Francis held that four of the Six Documents "consist of confidential information exchanged by attorney and client in the course of the client obtaining legal advice, and these documents are therefore privileged in their entirety." *Id.* at 6–7. Magistrate Judge Francis held that the fifth document consists of an unprivileged business letter to a banker containing no reference to legal advice. As for the sixth document, the Magistrate Judge held that it is privileged only to the extent that legal advice is actually discussed. Accordingly, the Magistrate Judge held that "Stratagem shall return to Heron those documents or parts of documents that I have determined were inadvertently disclosed. Stratagem shall not divulge the information obtained from the documents or use that information in discovery." *Id.* at 8.

With respect to Stratagem's contention that Heron's disclosure resulted in a subject matter waiver, Magistrate Judge Francis held that no finding of subject matter waiver was warranted. According to the Magistrate Judge, "[a]ny potential prejudice to Stratagem can be minimized by precluding Heron from relying upon any of these documents without first obtaining leave of court." *Id.* at 9. Additionally, the Magistrate Judge held that "Stratagem may apply for a reevaluation of the scope of the waiver upon a specific showing of prejudice resulting from selective waiver." *Id.* at 11.

### C. The Appeal

Stratagem now contends that the January 6th Opinion is contrary to law insofar as it compels the return of ten out of the Eleven Documents (the "Ten Documents"). Specifically, Stratagem contends that (1) three of the documents are not privileged at all; (2) Heron waived the privilege with respect to the remaining eight documents, as well as

the 144 Documents, by producing them during discovery; and (3) the disclosure of these privileged documents has resulted in a subject matter waiver. In response, Heron argues that (1) the Ten Documents are privileged; (2) the 144 Documents are not privileged; and (3) it has not waived the privilege by inadvertently disclosing the Ten Documents during discovery in this action.

As a threshold matter, the Court notes that decisions of a Magistrate Judge with respect to discovery matters are final unless "it has been shown that the magistrate's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed.R.Civ.P. 72(a); *Sherrell Perfumes, Inc. v. Revlon, Inc.,* 77 F.R.D. 705, 707 (S.D.N.Y. 1977). An order is " ' 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.' " *Nikkal Indus., Ltd. v. Salton, Inc.,* 689 F.Supp. 187, 189 (S.D.N.Y.1988) (quoting *Agricultural Servs. Ass'n v. Ferry–Morse Seed Co.,* 551 F.2d 1057, 1071 (6th Cir.1977)). Thus, a magistrate judge's resolution of a discovery dispute "should be afforded substantial deference and be overturned only if found to be an abuse of discretion." *Id.* In light of this standard, the Court will not overturn the January 6th Opinion unless it is clearly erroneous or contrary to law.

### 1. Privilege

Stratagem contends that the Magistrate Judge erred in concluding that three of the Five Documents are privileged. Accordingly, before reaching the question as to whether Heron waived the privilege by producing the documents during discovery, the Court must determine whether these three documents are privileged in the first instance.

The attorney-client privilege is based on a policy of encouraging openness and full disclosure between attorneys and their clients. *See Eigenheim Bank v. Halpern,* 598 F.Supp. 988, 990 (S.D.N.Y.1984). The privilege is triggered:

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communica-

tions relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.... *United States v. Bein,* 728 F.2d 107, 112 (2d Cir.) (quoting *United States v. Kovel,* 296 F.2d 918, 921 (2d Cir.1961)), *cert. denied,* 469 U.S. 837, 105 S.Ct. 135, 83 L.Ed.2d 75 (1984); *see also In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1036 (2d Cir.1984). The privilege attaches where a client requests legal advice, as contrasted with business advice. *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d at 1037. "The mere fact that business advice is given or solicited does not, however, automatically render the privilege lost: where the advice given is predominantly legal, as opposed to business, in nature the privilege will still attach." *United States v. Davis,* 132 F.R.D. 12, 16 (S.D.N.Y. 1990) (quoting *United States v. Davis,* 131 F.R.D. 391, 401 (S.D.N.Y.1990)).

▮ The three documents at issue (Bates nos. HII 06415–17, HII 05436–38 and HII 10319–21) consist of a memorandum from Anthony Casareale, an attorney with Pircher Nichols & Meeks ("Pircher Nichols"), to Peter Kompaniez ("Kompaniez"), president and CEO of Heron Financial Corporation, dated June 13, 1990 (the "Pircher Memorandum"). The Pircher Memorandum analyzes (1) the legal relationship between Heron and Stratagem; (2) whether the Phase II Joint Venture Agreement between the parties is terminable with or without cause; (3) possible damages in connection with terminating the agreement; and (4) Heron's litigation strategy. In his December 6th Opinion, Magistrate Judge Francis found that the Pircher Memorandum "has all the characteristics of a communication protected from disclosure by the attorney-client privilege." *See* December 6th Opinion at 2.

Stratagem now argues that, as Pircher Nichols represented a joint venture consisting of both Stratagem and Heron on certain matters, the Pircher Memorandum is not privileged.[9] The Court disagrees. Assuming that a joint venture did exist at one time between Stratagem and Heron, the Court finds that Pircher Nichols did not draft the Pircher Memorandum in connection with the representation of any such joint venture. As the Magistrate Judge noted in his December 6th Opinion, the Pircher Memorandum is a confidential communication between Pircher Nichols and Heron.[10]

Stratagem's further contention that the Pircher Memorandum is not privileged because it contains business, rather than legal, advice also lacks merit. The memorandum clearly reflects legal advice rendered in connection with the termination of the Phase II Joint Venture Agreement. Accordingly, the Court finds that the Pircher Memorandum is protected by the attorney-client privilege.[11]

## 2. Waiver

▮ As the Court agrees with the Magistrate Judge that ten out of the Eleven Documents (the "Ten Documents") are privileged in whole or in part, the Court must next determine whether Heron waived the privilege by producing these documents during discovery. Generally, the voluntary production of a privileged document to a third party "removes all confidentiality from the document and clearly effects a waiver of any privilege otherwise applicable." *Eigenheim Bank v. Halpern,* 598 F.Supp. at 991. A waiver must be intentional, however, to be effective. *See Dunn Chem. Co. v. Sybron Corp.,* 1975–2 Trade Cas. (CCH) ¶ 60, 561, 1975 WL 970 (S.D.N.Y.1975); *Connecticut Mut. Life Ins. Co. v. Shields,* 18 F.R.D. 448, 451 (S.D.N.Y.1955). Where the disclosure is inadvertent, the privilege is not waived. *See*

---

9. Heron denies that it entered into any partnership or "joint venture" with Stratagem. *See* letter from Robert J. Ward to Magistrate Judge Francis of 10/28/91, at 4.

10. Similarly, Stratagem argues that the Pircher Memorandum is not privileged because it contains confidential information obtained from Stratagem by Pircher Nichols in its capacity as counsel for the joint venture. This argument fails, however, as Stratagem has not indicated

what "confidential information" Pircher Nichols allegedly obtained by acting as counsel for the joint venture.

11. As neither party has objected to the Magistrate Judge's findings with respect to the remaining eight documents at issue, the Court accepts Magistrate Judge Francis's conclusion that all but one of these documents (excluding Bates no. HI 22321) is privileged in whole or in part. *See* January 6th Opinion at 7.

**544**

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y.1985).[12] Accordingly, the pertinent issue is whether the production of the Ten Documents was a knowing waiver, or simply a mistake. *Id.*

■ The Court finds that the conclusion of the January 6th Opinion that Heron's disclosure was unintentional is neither clearly erroneous nor contrary to law. The Magistrate Judge found:

The precautions taken by Heron's counsel were reasonable. They engaged in an initial document review, a second after the initial inadvertent disclosure was discovered, and a third when additional apparently privileged documents appeared at deposition. At each point where an inadvertent disclosure was suspected, Heron sought to rectify it promptly. The scope of discovery here was massive: more than 40,000 documents were produced by Heron. Finally, the number of privileged documents disclosed—whether characterized as six individual documents or 25 copies—was miniscule by comparison.

*See* January 6th Opinion at 5. The Court sees no reason to disturb this finding. Accordingly, Stratagem's objections to that part of the January 6th Opinion addressing inadvertent disclosure is denied. Stratagem shall return the Ten Documents to Heron, shall not disclose any information obtained from them, and shall not utilize them in litigation.

### 3. Subject Matter Waiver

Stratagem next claims that the 144 Documents are privileged on their face, and that the privilege was waived, either when Heron produced the documents during discovery, or by disclosure of the documents to third parties prior to this action. As a result, Stratagem argues that the January 6th Opinion is contrary to law in refusing to find that Heron's disclosure resulted in a subject matter waiver. The Court disagrees.

■ First, the Court finds Stratagem's argument as to the privileged nature of the

144 Documents to be disingenuous at best. The attorney-client privilege may be invoked only at the instance of the client. *See, e.g., United States v. Layton,* 855 F.2d 1388, 1406 (9th Cir.1988), *cert. denied,* 489 U.S. 1046, 109 S.Ct. 1178, 103 L.Ed.2d 244 (1989). Although Heron initially claimed that the 150 Documents were privileged, it withdrew this claim as to 144 of the documents upon further investigation. Tr. at 20–26. As Heron withdrew its claim of privilege, and as the Court agrees with the Magistrate Judge's determination that Heron's change of heart was not done in bad faith, the Court finds that Stratagem cannot now contend that Heron's documents were privileged at the time they were produced in this action.

■ Stratagem's alternative contention, that Heron's disclosure of the 144 Documents to third parties prior to discovery in this action resulted in a subject matter waiver, also lacks merit. The Court notes that, under some circumstances, disclosure of a confidential communication waives the privilege not only as to that communication, but also as to other communications made about the same subject. *See Status Time Corp. v. Sharp Elecs. Corp.,* 95 F.R.D. 27, 34 (S.D.N.Y.1982). However, "[m]ost of the cases that have found implied waivers involved assertions by a client that made his confidential communications a material issue in a judicial proceeding, circumstances in which it would be patently unfair to uphold a claim of privilege." *United States v. Aronoff,* 466 F.Supp. 855, 862 (S.D.N.Y.1979); *see also In re von Bulow,* 828 F.2d 94, 103 (2d Cir. 1987) (finding that the extrajudicial disclosure of an attorney-client communication does not waive the privilege as to the undisclosed portions of the communication). This is not a case in which the holder of the privilege affirmatively seeks to use privileged testimony while preventing his adversary from examining the remainder of the communication. *See In re Shearman & Sterling,*

12. While Stratagem claims that the inadvertent disclosure rule is contrary to law, the authority cited by Stratagem in support of this proposition consists of cases from other jurisdictions. Pursuant to the law in this District, however, inadvertent disclosure does not result in a waiver of the attorney-client privilege. *See Lois Sportswear,* *U.S.A., Inc. v. Levi Strauss & Co.,* 104 F.R.D. at 105; *Data Sys. of New Jersey, Inc. v. Philips Business Sys., Inc.,* No. 78 Civ. 6015, slip op. at 12–15, 1986 WL 733 (S.D.N.Y. Jan. 7, 1986); *Dunn Chem. Co. v. Sybron Corp.,* 1975–2 Trade Cas. (CCH) at ¶ 60,561, 1975 WL 970; *Connecticut Mut. Life Ins. Co. v. Shields,* 18 F.R.D. at 451.

No. 2–124 M 8–85, Part I, May 6, 1986; No. C84–3894; No. C84–743, 1986 WL 6157 (S.D.N.Y. May 30, 1986). As the Magistrate Judge properly concluded, Heron has not sought to utilize the 144 Documents in this litigation, but rather, has merely disclosed them in response to Stratagem's broad discovery requests. In fact, it is Stratagem, not Heron, that wishes to use this material. "Thus it cannot be said that [Heron] is using the privilege as both a sword and a shield. Rather, because [Heron] has partially let down its shield, [Stratagem] insists that it must be stripped entirely." *Id.* The Court will not permit such a reading of the waiver doctrine.

Moreover, Stratagem has not satisfied its burden of showing specific prejudice in the absence of subject matter waiver. *See Byrnes v. IDS Realty Trust,* 85 F.R.D. 679, 689 (S.D.N.Y.1980) ("The only prejudice that appears to arise is the prejudice that results whenever a party is deprived of information it would rather have."). The Court thus agrees with Magistrate Judge Francis that, although any privilege with respect to the 144 Documents has been waived, this waiver does not extend to other documents dealing with the same subject matter.[13] Accordingly, the findings set forth in the January 6th Opinion are affirmed. The Court will now turn to the objections of third-party defendant WGS to the April 19th Report filed in the Related Action.

## II. The April 19th Report

On January 25, 1993, third-party defendant WGS moved, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5), to dismiss the third-party complaint in the Related Action on the grounds of lack of personal jurisdiction and failure to execute proper service.[14] In his April 19th Report, Magistrate Judge Francis recommended that WGS's motion be denied without prejudice to renew following the completion of discovery. WGS objects to the Report's recommendation, claiming that the record is sufficiently complete for the Court to conclude that WGS is not subject to jurisdiction. In response, the Stratagem parties claim that, based on the record as now developed, there is sufficient evidence establishing that they may exercise jurisdiction over WGS in New York. In the alternative, the Stratagem parties argue that they are entitled to further discovery regarding the jurisdictional question. In accordance with Rule 72(b) and 28 U.S.C. § 636(b)(1)(C), the Court will review *de novo* those portions of the April 19th Report to which the parties have objected.

The Court notes initially that personal jurisdiction in a diversity action in this District is determined by reference to the jurisdictional statutes of New York State. *See Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 762 (2d Cir.1983). In this case, the relevant statutory provisions are New York Civil Practice Law and Rules ("CPLR") §§ 301 and 302.

### A. Personal Jurisdiction Pursuant to CPLR § 301

Pursuant to New York's interpretation of CPLR § 301,[15] a corporation subjects itself to personal jurisdiction in New York if it " 'engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of [its] 'presence' in this jurisdiction.' " *Id.* (quoting *Simonson v. Int'l Bank,* 14 N.Y.2d 281, 285, 251 N.Y.S.2d 433,

---

13. The Court recognizes that its decision could lead to prejudice. The Court agrees with the Magistrate Judge, however, that any potential prejudice to Stratagem can be minimized by precluding Heron from relying on any of the 144 Documents without first obtaining leave of court. In addition, while the Court agrees that Stratagem has failed to show that it is prejudiced, the Court finds that subject matter waiver may be warranted upon a *specific showing* that selective waiver of the privilege has prejudiced Stratagem in its trial preparation.

14. WGS also contended that the third-party action was instituted without leave of court, in violation of Fed.R.Civ.P. 14(a). In the April 14th Report, however, Magistrate Judge Francis found that WGS lacked standing to challenge the third-party complaint based on Rule 14(a). As neither party has objected to this portion of the Report, and as the Court sees no error on its face, the Court hereby accepts the Magistrate Judge's recommendation to deny WGS's motion to dismiss based on Rule 14(a).

15. CPLR § 301 provides: "A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."

436, 200 N.E.2d 427, 429 (1964)). The corporation must be "doing business" in New York "'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Id.* (quoting *Laufer v. Ostrow,* 55 N.Y.2d 305, 310, 449 N.Y.S.2d 456, 458, 434 N.E.2d 692, 694 (1982)).

 Stratagem concedes that WGS is a foreign corporation not licensed or authorized to do business in New York State. Stratagem contends, however, that WGS is "doing business" in New York by virtue of its complete control over the activities of its New York-based affiliate, WGS–NY.[16] It is well-established that

> [w]here a wholly-owned subsidiary is present in New York, a New York court may exercise personal jurisdiction over the parent if the latter's 'control over the subsidiary's activities [is] so complete that the subsidiary is, in fact, merely a department of the parent.'

*Katz Agency, Inc. v. Evening News Ass'n,* 514 F.Supp. 423, 428 (S.D.N.Y.1981) (quoting *Delagi v. Volkswagenwerk Ag of Wolfsburg, Germany,* 29 N.Y.2d 426, 328 N.Y.S.2d 653, 657, 278 N.E.2d 895 (1972)), *aff'd,* 705 F.2d 20 (2d Cir.1983); *see also Lawford v. New York Life Ins. Co.,* 739 F.Supp. 906, 916 (S.D.N.Y.1990). The fact that the subsidiary is "nominally independent," does not shield the parent from suit in the subsidiary's jurisdiction where the parent and subsidiary share the requisite unity. *DCA Food Indus. Inc. v. Hawthorn Mellody, Inc.,* 470 F.Supp. 574, 586 (S.D.N.Y.1979). Five factors to consider in making this determination include (1) common ownership; (2) financial dependency; (3) interference with a subsidiary's selection of personnel; (4) disregard for corporate formalities; and (5) control over a subsidiary's marketing and operational policies. *See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117, 120–122 (2d Cir.1984); *Larball Publishing Co. v. CBS Inc.,* 664 F.Supp. 704, 707 (S.D.N.Y.1987).

 The April 19th Report found that:

The bulk of Stratagem's evidence for WGS' New York presence is (1) a leasing proposal referring to "integrated" operations among different offices and international backing for New York endeavors; (2) reports to London personnel of WGS regarding rental arrangements and litigation in New York; (3) a draft letter and flow-chart purportedly indicating the "responsibility" of WGS partner Ian Dodwell for WGS–NY's operations; and (4) the fact that Marcus Rayner, formerly and perhaps currently a partner of WGS, now directs WGS–NY.

*See* April 19th Report at 5–6. The Court agrees with the Report that these facts do not demonstrate that WGS and WGS–NY share complete operational integration. The Court notes that Stratagem failed to submit any evidence disputing WGS's contentions that WGS–NY (1) is separately capitalized; (2) prepares a separate consolidated financial statement; (3) has an independent banking relationship; (4) has its own board of directors; (5) selects and assigns its own executive personnel; and (6) exclusively controls its marketing and operational policies. *See* Rayner Aff., ¶ 4. Accordingly, the Court finds that Stratagem has not met the jurisdictional test of CPLR § 301.

### B. Personal Jurisdiction Pursuant to CPLR § 302

Stratagem next contends that CPLR § 302 confers jurisdiction over WGS. CPLR § 302(a)(1) provides, in relevant part:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state.

"To come within this section of the statute, a defendant must have engaged in 'purposeful

---

**16.** It is uncontroverted that WGS–NY is "doing business" in New York. WGS claims that WGS–NY is a wholly-owned subsidiary of Weatherall Green & Smith Holdings B.V., a Netherlands corporation. The latter is wholly owned by Weatheralls Consultancy, Limited, a corporation existing under the laws of the United Kingdom.

*See* affidavit of Marcus Rayner, sworn to on January 25, 1993 ("Rayner Aff."), ¶ 2, annexed to the Notice of Motion of Third Party Defendant Weatherall Green & Smith to Dismiss for Lack of Personal Jurisdiction and Improper Service of Process.

activities' within the state, and there must be a 'substantial relationship' between those activities and the transaction out of which the cause of action arose." *Hedlund v. Prods. From Sweden, Inc.,* 698 F.Supp. 1087, 1090 (S.D.N.Y.1988).

▮ According to the April 19th Report: Stratagem's primary assertions in support of personal jurisdiction are (1) that with regard to Heron Tower I both WGS and WGS–NY acted as exclusive leasing agents; and (2) that with regard to Heron Tower II, WGS personnel from London joined Mr. Rayner in New York in September 1989 to make a presentation in a bid to become the exclusive brokers for Heron II [the "September 1989 meeting"]. *See* April 19th Report at 7. With respect to Heron Tower I, the Court agrees with the Magistrate Judge's findings that the Stratagem parties have "provide[d] no factual support and cite only to their own unverified complaint to establish WGS' role." *Id.* Accordingly, the Court finds that the Stratagem parties have not met their burden under CPLR § 302.

▮ As for Heron Tower II, Magistrate Judge Francis determined that WGS's participation in the September 1989 meeting constituted a transaction of business. The Court finds, however, that it is unclear whether WGS personnel actually participated in the September 1989 meeting. The Stratagem parties contend that Ian Dodwell ("Dodwell") and John S. Green ("Green"), partners of WGS, and Marcus J. Rayner ("Rayner"), an associate of WGS and a WGS–NY employee, participated in the September 1989 meeting. There is a great deal of controversy, however, over whether Dodwell, Green and Rayner were employed either as officers, directors or employees of WGS. WGS claims that Dodwell and Green attended the September 1989 meeting in their capacity as directors of Weatherall Green & Smith, Inc. ("WGS, Inc."), a nonparty corporate entity. *See* Affidavit of Marcus J. Rayner, sworn to on March 4, 1993 ("Rayner March Aff."), ¶ 4. According to WGS, neither individual had any relationship with WGS–NY during this time period. In fact, WGS claims that WGS–NY did not come into existence until December 13, 1991. *See* Certificate of Incorporation, annexed to the Rayner Aff. as Exh.

"A." WGS contends further that Rayner is merely a junior nonequity associate of WGS, and is neither an officer, director or employee of WGS.

▮ In any event, assuming that the September 1989 meeting was a transaction of business, the Court agrees with the findings of the April 19th Report that the "arising out of" requirement has not been met. In order to establish jurisdiction pursuant to CPLR § 302, "[t]he defendants' New York activities must be substantially proximate to the allegedly unlawful acts before the cause of action can be said to arise out of those activities." *Hedlund v. Prods. From Sweden, Inc.,* 698 F.Supp. at 1092 (quoting *Xedit Corp. v. Harvel Indus. Corp., Fidelipac,* 456 F.Supp. 725, 729 (S.D.N.Y.1978)). As the April 19th Report found:

> To forge this link, Stratagem must show that projections garnered from a presentation seeking an exclusive contract, which was rejected, were nonetheless the projections subsequently provided to Heron, which helped form the basis of the matter which Heron in turn sued upon.

*See* April 19th Report at 8–9. As the Stratagem parties have not yet established this connection, the Court finds that the requirements of section 302 have not been met.

### C. Discovery

▮ The April 19th Report concluded that additional discovery on the issue of personal jurisdiction is warranted. Although plaintiffs must make a *prima facie* showing of personal jurisdiction to withstand a motion to dismiss, the Court has discretion to order further discovery on the jurisdictional issue, provided that plaintiffs make a threshold showing of jurisdiction and establish that their position is not frivolous. *See Alicea v. Lasar Mfg. Co.,* 91 Civ. 3929, 1992 WL 230203, at *2, 1992 U.S. Dist. LEXIS 13027, at *2 (S.D.N.Y. Aug. 31, 1992); *see also Manhattan Life Ins. Co. v. A.J. Stratton Syndicate (No. 782),* 731 F.Supp. 587, 593 (S.D.N.Y.1990). Although the Stratagem parties have not made a *prima facie* showing, they have made a sufficient start toward establishing personal jurisdiction. Moreover, while some discovery already has taken place

in the Related Action, plaintiffs have not had the opportunity to obtain any discovery from WGS. Further discovery may elucidate the degree of control WGS exercised over WGS–NY during the relevant time period, as well as the employment status of Dodwell, Green and Rayner. Discovery may also explain the connection, if any, between the claims set forth in the Second Amended Complaint and the projections submitted at the September 1989 meeting. Accordingly, the Court finds that further discovery is warranted.[17] Rather than deny WGS's motion, however, the Court declines to rule on it, and, instead, orders that discovery proceed on the subject of personal jurisdiction. The Court will next consider the objections of third-party defendant KPF to the July 15th Report.

## III. July 15th Report

On March 22, 1993, KPF moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the third-party complaint for failure to state a claim upon which relief can be granted. In the alternative, KPF moved, pursuant to Rule 14(a) to sever the third-party action and have it stayed pending the disposition of the main action. In the July 15th Report, Magistrate Judge Francis recommended that KPF's motion be denied in all respects.[18] KPF now objects to the Report on the grounds that (1) the third-party complaint should be dismissed because it is not derivative of plaintiff's claims; (2) indemnity and contribution are not available in this case as the third-party complaint does not allege that KPF owed any duties to the Stratagem parties, and does not charge KPF with any tortious conduct; and (3) the third-party action should be severed. As mandated by Rule 72(b) and 28 U.S.C. § 636(b)(1)(C), the Court will review *de novo* those portions of the July 15th Report to which KPF objects.

17. With respect to the validity of service of process, the Court agrees with the conclusion of the April 19th Report that discovery may also clarify this jurisdictional issue.

18. The Magistrate Judge also recommended that the Court deny KPF's motion, pursuant to Rule 14(a), to dismiss on the ground that Stratagem failed to obtain leave of the Court to serve the

## A. The Report

With respect to an action for indemnity, the Report found that, in the absence of a contract between Stratagem and KPF, the crucial issue is whether KPF owed a duty to Stratagem by virtue of a relationship between the two parties approaching privity. In this instance, the Report found that the functional equivalent of privity was adequately pled. According to the Report:

First, KPF was retained by the plaintiff to design Heron Tower II. Therefore, KPF knew its plans were to be used for a particular purpose: the construction of Heron Tower II. Second, as the architect, KPF knew the construction companies would rely on its plans to build Heron Tower II. As the owner's representative, Stratagem was responsible for supervising the construction of Heron Tower II. Additionally, KPF knew Stratagem relied on KPF's figures and used them in calculations presented to Heron. Thus, Stratagem relied on KPF's work in furtherance of the construction of Heron Tower II. Third, the contract between KPF and Heron specified Stratagem as a direct and indirect beneficiary and provided Stratagem with compensation in the event of a breach. Stratagem ran weekly meetings representing Heron. Stratagem, as supervisor of the project, had at least two confrontations with KPF involving budget and time constraints. Finally, Stratagem received figures from KPF which Stratagem used in its calculations. Thus, Stratagem has adequately alleged facts establishing a link with KPF that approximates privity.

*See* July 15th Report at 8–9 (citations omitted).

Second, while the Report noted that contribution is not available in actions seeking recovery merely for breach of contract, the Report found that contribution is available in

third-party complaint. No timely objections to this recommendation have been made by the parties. As the Court has considered the Report and determines that there is no clear error on the record, the Court agrees with the Report's recommendation to deny KPF's motion to dismiss on the ground of failure to obtain leave to serve the third-party complaint.

this case. According to the Report, the original action between Heron and Stratagem sounded both in contract and in tort. Thus, "Stratagem and KPF may be viewed, for purposes of this motion, as joint tortfeasors against Heron." *Id.* at 13.

The Report next examined KPF's challenge to impleader. The Report noted that delay in bringing the third-party complaint and the fact that KPF had not participated in discovery already undertaken weighs against impleader. The Report found, however, that impleading would not prejudice KPF, and that the third-party complaint states a claim for which relief may be granted. Accordingly, the Report recommended that the Court permit KPF to be impleaded in this case.

Finally, the Report recommended denying KPF's motion for severance. Agreeing with the Stratagem parties' argument that severance would expose it to the risk of inconsistent determinations at trial, the Report stated that severance should not be granted.

## B. KPF's Objections

### 1. The Derivative Nature of Stratagem's Claims

KPF objects to the July 15th Report on the ground that it fails to consider whether the third-party complaint is derivative of the Second Amended Complaint. According to KPF, the allegations contained in the third-party complaint are actionable only by the plaintiff, and constitute a defense to some of the allegations contained in the Second Amended Complaint. Therefore, KPF claims that the third-party complaint must fail as a matter of law.

 Rule 14 of the Federal Rules of Civil Procedure provides:

At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.

"Third-party practice or impleader is permitted under the Federal Rules of Civil Procedure only where the defendant can show that if he is found liable to the plaintiff then the third-party defendant will be liable to him."

*Unilease Computer Corp. v. Major Computer Inc.,* 126 F.R.D. 490, 492 (S.D.N.Y.1989). Thus, impleader is permitted only where the third party's liability is in some way derivative of the outcome of the main claim. *Id.; see also National Bank of Canada v. Artex Indus., Inc.,* 627 F.Supp. 610, 613 (S.D.N.Y. 1986) ("The outcome of the third-party claim must be contingent on the outcome of the main claim."); *see also United States v. Joe Grasso & Son, Inc.,* 380 F.2d 749, 751–52 (5th Cir.1967).

 The Stratagem parties contend that the third-party complaint is wholly derivative of the Second Amended Complaint, as KPF is directly implicated in the matters for which Heron has brought causes of action. The Court agrees. First, Heron claims that the Stratagem parties failed to control construction costs. As set forth in the third-party complaint, however, KPF actively resisted the Stratagem parties' efforts to reduce the costs of the Heron Tower II project. In addition, Heron contends that the Viability Studies prepared by the Stratagem parties were misleading. According to the Stratagem parties, however, they relied on KPF for the underlying data. Similarly, while Heron alleges that the Stratagem parties inaccurately reported construction cost and square footage estimates, the Stratagem parties contend that they relied on KPF to provide the correct information. The Stratagem parties also relied on KPF, as architect for Heron Tower I, to ensure that the necessary documentation authorizing construction of a mezzanine level was in place. Rather than constituting a defense, as KPF argues, the Court finds that the third-party complaint adequately pleads secondary liability in the event that the Stratagem parties are found liable in the main action. Accordingly, the Court finds that the third-party complaint is sufficiently derivative of the Second Amended Complaint.

### 2. Indemnity and Contribution

KPF next argues that an action for indemnity and contribution cannot lie as the third-party complaint does not allege that KPF owed any duties to the Stratagem parties,

and does not charge KPF with any tortious conduct. The Court disagrees.

### a. Indemnity

In an action for indemnity, a party held legally liable to the plaintiff shifts the entire loss to another. *See Mas v. Two Bridges Assocs.*, 75 N.Y.2d 680, 689–90, 555 N.Y.S.2d 669, 554 N.E.2d 1257 (1990). "The right to do so may be based upon an express contract, but more commonly the indemnity obligation is implied, ... based upon the law's notion of what is fair and proper as between the parties." *Id.* at 690, 555 N.Y.S.2d 669, 554 N.E.2d 1257; *see also McDermott v. New York*, 50 N.Y.2d 211, 428 N.Y.S.2d 643, 646, 406 N.E.2d 460 (1980).

 KPF contends that it did not enter into any contract with the Stratagem parties. Therefore, according to KPF, the third-party complaint must be dismissed because the allegations contained therein are actionable only by the plaintiff.[19] In the absence of an express contract, the Court must analyze whether KPF owed any duties to the Stratagem parties.

The July 15th Report properly concluded that Stratagem's indemnity claims hinge upon whether the relationship between the parties approaches privity. *Ossining Union Free School Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 419, 541 N.Y.S.2d 335, 337, 539 N.E.2d 91 (1989). The Court is bound by New York law in making this determination. *See Williams and Sons Erectors, Inc. v. South Carolina Steel Corp.*, 983 F.2d 1176, 1181 (2d Cir.1993).

 Three factors necessary to a finding of liability include: (1) awareness that the information given by the third-party defendant was to be used for a particular purpose; (2) reliance by the third-party plaintiff in furtherance of that purpose; and (3) conduct by the third-party defendant linking it to the third-party plaintiff and demonstrating the third-party defendant's knowledge of the

party's reliance. *See Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 493 N.Y.S.2d 435, 443, 483 N.E.2d 110 (1985). The Stratagem parties have adequately alleged all three prongs of this test. First, KPF knew that its drawings were to be used for a particular purpose, namely, the construction of Heron Towers I and II. Second, the Stratagem parties relied on figures provided by KPF in drafting the Viability Studies, and submitting construction cost and square footage estimates to Heron. Finally, the Stratagem parties alleged facts establishing a sufficiently close relationship between themselves and KPF for the Court to find an equivalent of privity. The Stratagem parties alleged that they were the beneficiaries of the KPF Contract, and that the Contract provided them with compensation and indemnification in the event of a breach. Stratagem also · supervised weekly meetings as Heron's representative and had several disputes with KPF regarding budgetary problems and delays in construction. Additionally, Stratagem relied on figures obtained from KPF in drafting the Viability Studies. Accordingly, as the Court finds that the Stratagem parties have properly pled the functional equivalent of privity, their third-party action for indemnity may lie.

### b. Contribution

 Section 1401 of New York's Civil Practice Law and Rules provides that "two or more persons who are subject to liability ... may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought." Thus, in a third-party action for contribution, no privity of contract is required in order to state a valid cause of action. *See Crow–Crimmins–Wolff & Munier v. Westchester*, 90 A.D.2d 785, 455 N.Y.S.2d 390, 391 (2d Dep't 1982); *see also McDermott v. New*

---

19. KPF actually argues that "if the allegations of the third-party complaint would support a claim by the plaintiff as against the third-party defendant, the third-party complaint does not qualify to be asserted under Rule 14." *See* Objections to the Report and Recommendation of the Magistrate Judge Dated July 15, 1993, at 5. KPF misstates the law. While it is no longer possible under Rule 14, as amended in 1948, to implead a

party claimed to be *solely* liable to the plaintiff, *see Barab v. Menford*, 98 F.R.D. 455, 456 (E.D.Pa.1983), a third-party plaintiff may implead a party who is potentially liable to *both* the third-party plaintiff and the plaintiff in the original action. *See, e.g., Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 15–16 (2d Cir.1991).

*York,* 50 N.Y.2d 211, 428 N.Y.S.2d at 646, 406 N.E.2d 460 ("The right to contribution is not founded on nor does it arise from contract. . . ."). Rather, "[t]he right to contribution and apportionment of liability among alleged multiple wrongdoers arises when they each owe a duty to plaintiff or to each other and by breaching their respective duties they contribute to plaintiff's ultimate injuries." *Trustees of Columbia Univ. v. Mitchell/Giurgola Assocs.,* 109 A.D.2d 449, 492 N.Y.S.2d 371, 375–76 (1st Dep't 1985).

 KPF claims that an action for contribution is not viable as it has not been charged with any tortious conduct. It is well-established that contribution is only available where the party alleges some form of tort liability. *See Board of Educ. v. Sargent, Webster, Crenshaw & Folley,* 71 N.Y.2d 21, 523 N.Y.S.2d 475, 478, 517 N.E.2d 1360 (1987). "[A] simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 382, 521 N.Y.S.2d 653, 656, 516 N.E.2d 190 (1987). Such an independent legal duty may be imposed by law as a function of the parties' relationship. *Sommer v. Federal Signal Corp.,* 79 N.Y.2d 540, 583 N.Y.S.2d 957, 961, 593 N.E.2d 1365 (1992). Other factors to consider in distinguishing tort and contract claims include the nature of the injury, the manner in which the injury occurred and the resulting harm. *Id.*

 The July 15th Report properly concluded that the Second Amended Complaint sounds in both contract and tort. *See* July 15th Report at 13. KPF's duty to act with reasonable care and to provide accurate information arose from the nature of its services as well as from the KPF Contract itself. As the Stratagem parties allege that any negligence in their performance resulted from reliance on KPF's estimates, and as a result of KPF's refusal to correct budget problems and construction delays, the Stratagem parties' action for contribution is appropriate. *See Sommer v. Federal Signal Corp.,* 79 N.Y.2d 540, 583 N.Y.S.2d at 965, 593 N.E.2d 1365 (finding that contribution not barred where action sounds both in contract and in tort). The Court finds, however, that there is some confusion as to which counts of the Second Amended Complaint the Stratagem parties are claiming indemnity and/or contribution. Accordingly, after the completion of discovery, the Stratagem parties shall specify, count by count, each count set forth in the Second Amended Complaint for which they seek indemnification and/or contribution from KPF.

### 3. Severance

 KPF contends that the July 15th Report erred in concluding that the third-party action should not be severed from the main action. According to KPF, the third-party action should be severed because (1) Stratagem parties delayed in impleading KPF; (2) further discovery in this action would cause KPF "great hardship and expense;" and (3) the third-party action may delay trial of the main action. For the reasons that follow, the Court finds that the third-party action should not be severed.

 Federal Rule of Civil Procedure 42(b) provides, in relevant part, that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any . . . third-party claim." The movant has the burden of showing that it will be prejudiced if a separate trial is not granted. *Whitted v. United States,* 83 Civ. 1169, Slip Op. at 2, 1986 WL 5098 (S.D.N.Y. April 25, 1986). Factors to consider in making this determination include:

> whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Tyson v. Cayton,* 88 Civ. 8398, 1990 WL 209381, *3, 1990 U.S. Dist. LEXIS 16,771, at *6 (S.D.N.Y. Dec. 10, 1990).

The Court finds that the factors of convenience, judicial economy and efficiency weigh in favor of a single trial. The factual and legal issues of the third-party complaint and

the underlying action are sufficiently related such that testimony and evidence relevant to both trials is expected to be presented. Accordingly, "[t]he most economical and speedy resolution of the entire case is to have one trial, not two." *Sutton Hill Assocs. v. Landes,* 87 Civ. 8452, 1988 WL 56710, *3, 1988 U.S. Dist. LEXIS 4746, at *7–8 (S.D.N.Y. May 24, 1988).

Additionally, KPF has not shown sufficient prejudice for the Court to find that severance is warranted. While KPF claims that it will be put to "great expense and hardship" if it is forced to engage in discovery, as the Stratagem parties have pointed out, KPF has already been involved in discovery in the Related Action for more than twenty months. Furthermore, the Stratagem parties have indicated that KPF already has produced documents as a non-party, and no further document production is expected from it. Accordingly, as no trial date has been set in this case, KPF has sufficient time to take whatever additional discovery is necessary.

Finally, the Court finds that severance may unduly prejudice the third-party plaintiffs. As the July 15th Report appropriately determined, severance in this case poses the risk of inconsistent determinations at trial. *See* July 15th Report at 20; *see also Assicurazioni Generali, SPA. v. Terranova,* 40 Fed. R.Serv.2d (Callaghan) 850, 1984 WL 1191 (S.D.N.Y.1984). Accordingly, upon consideration of the above-enumerated factors, the Court finds that severance is not proper.

## CONCLUSION

For the reasons set forth above, the January 6th Opinion is affirmed, and the Court hereby orders Stratagem to return the Ten Documents to Heron, and to refrain from disclosing any information obtained from them, or from utilizing them in litigation. The Court also agrees with Magistrate Judge Francis that, although any privilege with respect to the 144 Documents has been waived, this waiver does not extend to any other documents dealing with the same subject matter. Heron shall not rely on the 144 Documents in this litigation without receiving prior leave of the Court, and Stratagem may apply for a reevaluation of the scope of the waiver upon a specific showing of prejudice resulting from selective waiver.

With respect to the April 19th Report, the Court declines to rule on WGS's motion for lack of personal jurisdiction, and, instead, orders that discovery proceed on the subject of personal jurisdiction. Discovery on this issue is to be completed by April 29, 1994, and WGS is to refile its motion to dismiss, if warranted, on or before May 13, 1994.

Finally, upon consideration, the Court accepts the July 15th Report in its entirety. Accordingly, KPF's motion to dismiss for failure to state a claim upon which relief may be granted, or in the alternative, for severance, is denied. The parties in both actions are to finish all remaining discovery by May 31, 1994. After the close of discovery, the Stratagem parties are directed to specify, count by count, each count set forth in the Second Amended Complaint for which they seek indemnification and/or contribution from KPF. All parties are directed to appear for a pretrial conference on June 1, 1994, at 10:30 a.m.

SO ORDERED.